**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**PROTEX INDUSTRIES, INC.,
Defendant–Appellant.**

No. 88–1371.

United States Court of Appeals,
Tenth Circuit.

May 11, 1989.

personnel manual, quoted above.

Michael J. Norton, Acting U.S. Atty., Denver, Colo. (Roger J. Marzulla, Asst.

Atty. Gen., Kenneth R. Fimberg, Douglas W. Curless, Asst. U.S. Attys., Denver, Colo., Peter J. Murtha, Peter R. Steenland, Jr., J. Carol Williams, Dept. of Justice, Washington, D.C., Elizabeth M. Ojala, U.S. E.P.A., Washington, D.C., of Counsel, with him on the brief), for plaintiff-appellee.

David G. Palmer (Michael E. Miner, with him on the brief), Denver, Colo., for defendant-appellant.

Before HOLLOWAY, Chief Judge, BRORBY, Circuit Judge, and SAFFELS, District Judge *.

SAFFELS, District Judge.

This appeal was taken from the first criminal conviction under the "knowing endangerment" provision of the federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6928(e), recently enacted by Congress. Appellant Protex Industries, Inc. ("Protex") appeals from its criminal conviction under that provision as well as from its other convictions under the RCRA.[1]

Protex operated a drum recycling facility. It purchased used 55 gallon drums, many of which previously contained toxic chemicals. It cleaned and repainted the drums and used them to store and ship other products it manufactured.

The Environmental Protection Agency ("EPA") inspected Protex's facilities annually. One of these inspections was conducted on July 24, 1984, by a representative of the Colorado Department of Health under contract with the EPA. The Department of Health conducted the inspection pursuant to section 3012 of the RCRA, 42 U.S.C. § 6933, which requires each state to compile an inventory of sites at which hazardous waste has at any time been disposed of, treated or stored. The inspector

---

* The Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation.

1. Protex was found guilty of one count of conspiring to violate the RCRA and the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, and conspiring to make false statements in violation of 18 U.S.C. § 371; four counts of making false statements to federal and state environmental and health agencies; five counts of illegal transportation and disposal of hazardous wastes in violation of the RCRA; one count of illegal storage of hazardous wastes; one count of illegal treatment and storage of hazardous wastes; and one count of violating the Clean Water Act.

took soil samples while at the site, but results of the laboratory analysis of those samples were never provided to Protex.

Another inspection was conducted in August of 1985. Again samples were taken, but results were not provided to Protex.

On March 10 and 11, 1986, investigators from the EPA and the Federal Bureau of Investigation executed a search warrant at Protex's drum recycling facility. A federal grand jury later returned a nineteen count indictment against Protex, and Protex was convicted of sixteen of those nineteen counts.

Counts 17 through 19 of that indictment charged Protex with knowingly placing three of its employees in imminent danger of death or serious bodily injury as a result of its other alleged violations of the RCRA. The evidence showed that safety provisions for the employees in the drum recycling facility were woefully inadequate to protect the employees against the dangers of the toxic chemicals. Government experts testified that without these proper safety precautions, the employees were at an increased risk of suffering solvent poisoning. Solvent poisoning may cause psychoorganic syndrome, of which there are three types. Symptoms of Type 1 psychoorganic syndrome are disturbances in thinking, behavior and personality, and sleeping disorders. Type 1 is reversible quickly and goes away when exposure ends. Type 2 psychoorganic syndrome is divided into two categories, A and B. An individual suffering from Type 2–A suffers changes in personality and has difficulty controlling impulses; the individual engages in unplanned and unexpected behavior, lacks motivation, and usually experiences severe mood swings. If exposure to the toxic chemicals ends, an individual suffering from Type 2–A will eventually recover. An individual suffering from Type 2–B psychoorganic syndrome, however, will have additional, non-reversible symptoms, such as concentration problems, short and remote memory problems, decreased learning ability, and cognitive impairment. Finally, an individual suffering from Type 3 psychoorganic syndrome suffers a severe loss of learning

capabilities, severe memory loss, severe psychiatric abnormalities and gross tremor. The government experts also testified that in addition to being at risk for psychoorganic syndrome, the employees suffered an increased risk of contracting cancer as a result of their extended exposure to the toxic chemicals.

The testimony of government experts further showed that two of the employees certainly had Type 2–A psychoorganic syndrome and may have had Type 2–B. The government expert testified that he could not demonstrate that the third employee was suffering from psychoorganic syndrome at the time he was examined, but pointed out that he might still have suffered from the syndrome and since recovered from its symptoms. Finally, the expert testified that all three individuals had an increased permanent and irreversible risk of developing cancer due to their prolonged exposure to the toxic chemicals.

Protex states three grounds for its appeal. It contends that the trial court rendered 42 U.S.C. § 6928(e) unconstitutionally vague as applied in two regards. First, it argues that the trial court erred in allowing the "knowing endangerment" counts to go to the jury, despite the alleged absence of any evidence showing the employees were placed in imminent danger of serious bodily injury as specifically defined by 42 U.S.C. § 6928(f)(6). Secondly, it contends the trial court rendered the section unconstitutionally vague as applied because it improperly instructed the jury that an individual was placed in "imminent danger" if it "could reasonably be expected" that the set of conditions would cause death or serious bodily injury. Defendant contends this language did not track the language of the statute and it unconstitutionally expanded it beyond the intent of Congress. Finally, appellant contends the trial court erred in refusing to give a requested instruction on Protex's defense that the government failed to meet its duty to provide results of any on-site inspections to Protex, as required by 42 U.S.C. § 6927(a).

## I.

■ The question of whether a statute has been rendered unconstitutionally vague as applied is a question involving issues of law and our standard of review is therefore de novo. *Western Nuclear, Inc. v. Huffman*, 825 F.2d 1430, 1437 (10th Cir.1987), *rev'd on other grounds*, ⸺ U.S. ⸺, 108 S.Ct. 2087, 100 L.Ed.2d 693 (1988); *Allis–Chalmers Credit Corp. v. Tri–State Equipment Co.*, 792 F.2d 967, 970 (10th Cir.1986); *Supre v. Ricketts*, 792 F.2d 958, 961 (10th Cir.1986).

Although a statute's meaning may be plain on its face, it can be rendered unconstitutionally vague as applied. The void for vagueness doctrine finds its basis in the guarantee of due process. In *Connally v. General Const. Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926), the United States Supreme Court elaborated on the void for vagueness doctrine. "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Id.* at 391, 46 S.Ct. at 127. A statute can be void for vagueness not only on its face, but as applied, as a result of "an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie v. City of Columbia*, 378 U.S. 347, 352, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964). Whether a court is analyzing a statute as void for vagueness on its face or as applied, the essence of the doctrine is that a potential defendant must have some notice or "fair warning" that the conduct contemplated is forbidden by the criminal law. *Id.*

Title 42, United States Code, Section 6928(e) provides that: "Any person who knowingly transports, treats, stores, disposes of, or exports any hazardous waste identified or listed under [the RCRA] in violation of [the criminal provisions of the RCRA] who knows at that time that he thereby places another person in imminent danger of death or serious bodily injury, shall [be guilty of an offense against the United States.]" Title 42, United States Code, Section 6928(f)(6) defines "serious bodily injury" as: (A) bodily injury which involves a substantial risk of death; (B) unconsciousness; (C) extreme physical pain; (D) protracted and obvious disfigurement; or (E) protracted loss or impairment of the function of a bodily member, organ, or mental faculty. Protex contends that the trial court rendered section 6928(e) unconstitutionally vague by expanding the definition of "serious bodily injury" beyond that set out in section 6928(f)(6). Protex states that if the employees were placed in any "danger" at all, it was a danger of developing Type 2–A psychoorganic syndrome, a condition which does not come within the scope of subparagraphs (A)–(E) of section 6928(f)(6). Protex also argues that the enhanced "risk" of contracting some indeterminate type of cancer at some unspecified time in the future is not sufficient to constitute "serious bodily injury."

Appellant's position demonstrates a callousness toward the severe physical effect the prolonged exposure to toxic chemicals may cause or has caused to the three former employees. There was evidence presented at trial to show that the three individuals not only had been in danger of serious bodily injury, but had in fact suffered serious bodily injury: Type 2–A and Type 2–B psychoorganic syndrome may cause an impairment of mental faculties.[2]

**2.** While Protex argues that the psychoorganic syndrome cannot be the basis for the serious bodily injury element here, because the syndrome was not defined by medical experts until after the investigation of Protex, Protex does not demonstrate that it was not known prior to that time that extended exposure to toxic chemicals could bring on certain impairments of mental faculties. Appellant's argument in this regard is rejected. The evidence presented at trial, viewed in a light most favorable to the government, was sufficient to show that the employees were in imminent danger of suffering "serious bodily injury" as that term is defined in 42

## II.

■ Protex contends secondly that the statute was rendered unconstitutionally vague because in instructing the jury, the district court defined "imminent danger" as "the existence of a condition or combination of conditions which could reasonably be expected to cause death or serious bodily injury unless the condition is remedied." Protex contends this definition was in error, because in 42 U.S.C. § 6928(f)(1)(C), Congress referred to a "substantial certain[ty]" to cause death or serious bodily injury. Protex contends the use of the term "reasonable expectation," rather than the statutory term "substantial certainty," rendered the statute unconstitutionally vague as applied. Our standard of review is again de novo. *Western Nuclear, Inc.*, 825 F.2d at 1437; *Allis–Chalmers Credit Corp.*, 792 F.2d at 970; *Supre*, 792 F.2d at 961.

In asserting its position on this point, Protex ignores the fact that the court indeed did instruct the jury in language directly derived from the statute. 42 U.S.C. § 6928(f)(1)(C) provides that "a person's state of mind is knowing with respect to ... a result of his conduct, if he is aware or believes that his conduct is *substantially certain* to cause danger of death or serious bodily injury." (Emphasis added.) Thus, the "substantially certain" standard appears to define the *mens rea* necessary for commission of the crime, rather than the degree to which defendant's conduct must be likely to cause death or serious bodily injury. And the court did quote directly from section 6928(f)(1)(C) in instructing the jury. Protex's contention that the term "substantial certainty," rather than the term "reasonable expectation," should have been used in defining "imminent danger" has no basis in the statutory language.

What Protex in fact seems to be contending is that in general, the statutory language and the legislative history indicate an intent on the part of Congress to narrowly restrict the incidences in which a party may be found guilty of "knowing

U.S.C. § 6928(f)(6). By submitting that evidence to the jury, the court did not render the

endangerment," and to limit its application only to actions which cause the most severe physical injury. It uses the reference to the term "substantially certain" in 42 U.S. C. § 6928(f)(1)(C) merely as an example of this general intent.

The court need not address Congressional intent in this instance. We must keep in mind that defendant's argument is based on the void for vagueness doctrine. The essence of that doctrine is that a defendant must have advance notice that its contemplated conduct is forbidden. The court need only look at the statutory language, compare it with the instruction given by the district court, and conclude whether defendant was able to predict that its conduct would violate the RCRA. No complex analysis of legislative history is necessary for that inquiry.

Defendant is unable to articulate why it could have understood that the RCRA forbade it from placing its employees in a situation "substantially certain" to cause danger of death or serious bodily injury, but why it could not have understood that it should not place its employees in situations "reasonably expected" to cause death or serious bodily injury. The argument, premised on different parts of the statute, is unpersuasive as to lack of notice. The trial court's interpretation was not an unforeseeable expansion of a criminal statute that was narrow and precise, in violation of due process. *See Devine v. New Mexico Dept. of Corrections*, 866 F.2d 339, 345 (10th Cir.1989). The gist of the "knowing endangerment" provision of the RCRA is that a party will be criminally liable if, in violating other provisions of the RCRA, it places others in danger of great harm and it has knowledge of that danger. The district court conveyed this same idea to the jury in its instructions. The court rejects appellant's argument that it could not be aware that its behavior was prohibited by the "knowing endangerment" provision of the RCRA.

statute unconstitutionally vague as applied, and appellant's argument is rejected.

## III.

Finally, Protex takes the position that the district court erred in failing to instruct the jury of the government's duty to report test results as required under 42 U.S.C. § 6927(a). Since we are presented with a question of law, our standard of review is again de novo. *Western Nuclear, Inc.*, 825 F.2d at 1437.

Section 6927(a) provides that if any laboratory analysis is made of samples taken at the site in question, "the results of such analysis shall be furnished promptly to the owner, operator, or agent in charge." The parties agree that the Colorado Department of Health, acting under contract with the EPA, failed to promptly provide to Protex the results of the 1984 and 1985 tests.

The court must first address whether this defense was properly raised below. The subject of the government's duty under section 6927(a) arose twice in the course of the trial below. It arose first in a motion to suppress the evidence obtained from the searches. That motion was denied. Then in the instruction conference, the defendant's attorney proposed an instruction which recited the language of 42 U.S.C. § 6927(a). The motion to suppress was again discussed and the court adopted its previous ruling. Defense counsel went on to state: "[T]he instruction of the proper statement of the law that should have been followed by these officials during the 1984 and 1985 inspections[,] they did not follow this law and there has [sic] been a lot of questions asked in the evidence about their duty to notify Protex. And so it's in the context of the trial and the evidence at trial that we are requesting this particular instruction."

It is not at all clear from this discussion that defendant did in fact tell the court that the government's failure to notify it of the test results was an essential part of its defense, or that the 1984 and 1985 searches were relevant to any matter other than the motion to suppress. Thus, the matter may not have been properly raised in the court below, and the issue may not have been preserved. *See* Fed.R.Civ.P. 51.

Any confusion regarding whether the issue was raised below is certainly understandable, since even at this stage, the parties and the court are not at all clear as to why section 6927(a) should provide a defense to a RCRA criminal action.[3] In an abundance of caution, the court will give the benefit of the doubt to the defendant and treat the issue as if it had been raised properly below. If the issue was properly raised, defendant was entitled to a specific jury instruction on that defense if the instruction was at all supported by the evidence and the law. *United States v. Swallow*, 511 F.2d 514, 523 (10th Cir.), *cert. denied*, 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed.2d 66 (1975). Protex vehemently argues that its requested instruction had a basis in the law, and it is correct in arguing so; the proposed instruction correctly set out the statutory mandate. Further, Protex's argument was supported by the facts, because the government concedes it did not comply with its duty under section 6927(a) and promptly provide Protex with the results of the analyses. However, these undisputed facts and law only mandate that the court instruct the jury accordingly if that evidence and law establish a valid defense to a criminal action. The government, concededly, acted improperly in this instance; Protex did not receive the results of the 1984 and 1985 inspections. But this is a proceeding against Protex, not against the EPA. There is no authority in the RCRA or in its legislative history which would make an abrogation of the government's duty a mitigating factor in a criminal prosecution. Protex had an indepen-

---

3. Protex does admit it is not arguing that the government's duty to provide test results is a condition precedent to criminal prosecution under section 6928. It further concedes that its theory is not that because the government failed to provide test results, Protex did not know that it was violating the RCRA and it therefore was not liable. Rather, Protex seems to argue that since the government failed to provide it with test results, it reasonably assumed that nothing adverse showed up in those results and further assumed that it was in compliance with the RCRA. It also seems to contend that had it been informed that it was in violation, it would have promptly corrected the problem.

dent duty under RCRA to ensure that it was in compliance with the criminal and civil provisions of that Act. *See United States v. Hayes Int'l Corp.*, 786 F.2d 1499, 1503 (11th Cir.1986) (defendant's ignorance that it was in violation of RCRA is not sufficient to absolve it from criminal liability); *see also* 40 C.F.R. Parts 262–65 (setting out detailed, self-policing duties of handlers of hazardous wastes). Any information the government might provide pursuant to its duty under section 6927 to Protex was simply surplusage for purposes of Protex's potential criminal liability. Further, even if the government had notified Protex of the violations discovered after the 1984 and 1985 inspections, Protex's subsequent remedial activity would not have abrogated its criminal liability for those violations. Instead, it would only help to prevent further criminal violations.

Since section 6927(a) provides no defense to criminal charges under the RCRA, the district court was not in error in refusing to instruct the jury in the language of that statute.

Finding no error in the proceedings below, the judgment of the district court is AFFIRMED.