F I L E D
United States Court of Appeals
Tenth Circuit

JUN 23 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MIKE R. NYSTROM, SR.,

Defendant-Appellant.

No. 96-8082
(Dist. of Wyoming)
(D.C. No. 95-CR-054-1D)

## ORDER AND JUDGMENT*

Before **PORFILIO**, **LUCERO,** and **MURPHY**, Circuit Judges.

The government charged Mike R. Nystrom in a seven count indictment with conspiracy to violate the Lacey Act, interstate transportation of wildlife taken in violation of state law, and creation of false records for interstate transportation of illegally taken wildlife. After a jury found Nystrom guilty of Counts VI and VII, the district court sentenced Nystrom to six months incarceration followed by two

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

years supervised release and imposed a fine of $5,000. Nystrom appeals his conviction claiming: 1) there were two instances of prosecutorial misconduct violating his Fourteenth Amendment rights; 2) the government obtained evidence pursuant to a general warrant in violation of the Fourth and Sixth Amendments; 3) the statutes underlying Nystrom's conviction of Count VII are vague and the court gave an inadequate response to a jury question about those statutes; 4) there was insufficient evidence to support Nystrom's conviction of Count VI and the court erred in responding to a jury question regarding that count. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRMS Nystrom's conviction.

## BACKGROUND

On May 18, 1995, a federal grand jury indicted Nystrom on one count of conspiracy to violate the Lacey Act, 18 U.S.C. § 371; five counts of interstate transportation of wildlife taken in violation of state law under 16 U.S.C. §§ 3372(a)(2)(A) & 3373(d)(1)(B); and one count of creating a false record for interstate transportation of illegally taken wildlife under 16 U.S.C. §§ 3372(d)(2) & 3373(d)(3)(A)(ii).

Nystrom was an owner and operator of a big game outfitting company: Wolf Lake Outfitters of Pinedale, Wyoming. His sons, Mike S. Nystrom Jr. and Greg Nystrom, were co-owners of Wolf Lake Outfitters. At trial, the government presented evidence that Nystrom arranged for out-of-state hunters to use his, or

other employees of Wolf Lake Outfitters', hunting licenses to place on animals after shooting them. Nystrom and his employees then arranged for these animals to be mounted and transported out of state to the unlicensed and non-resident hunters. Nystrom, along with several of his employees, also prepared false outfitter reports, filing them with the Wyoming Game and Fish Department and the Wyoming Outfitter Board. The government presented evidence that this activity occurred from approximately January 1, 1987 through January 1, 1994.

The United States Fish and Wildlife Service investigated Wolf Lake Outfitters and on April 15, 1993, special agents executed a search warrant on the business premises. The warrant was obtained based on probable cause established by Special Agent Robert Prieksat's affidavit describing the investigation. Nystrom did not contest that probable cause existed to support the warrant.

Pursuant to the warrant, the agents seized approximately 5,000 documents including photos, bank records, index cards containing customer names, receipts, invoices, cards, and financial records. Based on the findings of the search, Nystrom was arrested. During trial, Nystrom filed a Motion to Suppress and for Return of Property Pursuant to Rule 41, Fed. R. Crim. P., and the Fourth Amendment to the Constitution of the United States. The district court denied that motion, finding the warrant was sufficiently specific.

On August 18, 1995, Nystrom moved to dismiss the indictment for failure of the grand jury evidence to support the indictment. The district court agreed with respect to Count IV and dismissed that count without prejudice, finding "it is undisputed that no evidence was presented to support Count IV of the indictment."

After a petit jury had been selected, but before it was sworn, Nystrom filed a Motion to Dismiss the Indictment for Prosecutorial Misconduct. Nystrom alleged, as he does before this court, that the Assistant United States Attorney and government investigators threatened witnesses to the extent that they could not choose to testify truthfully. To resolve Nystrom's motion, the district court held an *in camera* proceeding in which the court interviewed each of the witnesses to determine whether they had been threatened or coerced by the government. Nystrom and his counsel were allowed to be present at the proceeding. The district court ordered counsel for both sides not to communicate with the witnesses before the *in camera* proceedings and did not allow counsel for either side to examine or cross-examine the witnesses during the proceeding. The court did, however, allow both sides to propose questions for the court to propound. After its examination, the court found no evidence of prosecutorial misconduct and thus found that Nystrom's due process and Sixth Amendment rights had not been violated.

Another witness testified during trial that he was "afraid" of counsel for the government. The court convened a hearing outside the presence of the jury and again found insufficient evidence that the witness had been threatened or intimidated by the government. Nystrom again filed a Motion to Dismiss for Prosecutorial Misconduct based on the same claims; the motion was denied.

During deliberations, the jury asked the court to make two separate clarifications. First, the jury asked for a clarification with respect to Count VII and part four of jury instruction number 57.[1] Referring to 16 U.S.C. § 3373(d)(3)(A)(ii), the jury asked: Does "'involve' mean defendant made the sale or that the sale was able to occur due to defendant's involvement by submission of a false record?" The court responded by giving the jurors a dictionary definition of the word "involve": "to relate closely or connect." Second, the jury requested clarification with respect to Count VI and jury instruction number 29.[2] Specifically, the jury questioned whether the consideration for the sale of wildlife

_____

[1]Jury Instruction number 57 stated that the Prosecution has the burden of proving beyond a reasonable doubt: "That the Defendant's submission of a false record concerning the wildlife involved the sale or purchase of wildlife with a market value greater than $350."

[2]Jury Instruction number 29 concerned the "sale" component of 16 U.S.C. § 3372(c) and stated, in part: "It is deemed to be a sale of . . . wildlife . . . in violation of this chapter for a person for money or other consideration to offer or provide--(A) guiding, outfitting, or other services; or (B) a hunting or fishing license or permit; for the illegal taking, acquiring, receiving, transporting, or possessing of . . . wildlife."

has to be agreed upon before or after the hunt takes place. The court admonished the jury to "carefully review" the instructions and not to "speculate about the meaning of this term but apply it as set forth in these instructions." The jury then returned verdicts of guilty with respect to Counts VI and VII.[3] Nystrom now appeals.

**ANALYSIS**

I.   PROSECUTORIAL MISCONDUCT

Nystrom claims the government engaged in prosecutorial misconduct by threatening and discouraging defense witnesses from testifying. He also claims the district court erred when it ordered defense counsel not to interview witnesses until after the court conducted its *in camera* interviews, refused Nystrom's right to cross-examine the witnesses during the *in camera* proceedings, and refused Nystrom's right to cross-examine witnesses in the presence of the jury concerning prosecutorial misconduct.

Nystrom submitted each of these claims to the district court in his Motion for Judgment of Acquittal, to Dismiss, and for a New Trial. The district court

---

[3]Count VI alleged that on approximately October 31, 1991 and August 31, 1992, Nystrom knowingly sold and transported a buck mule deer to Patrick Byrne in violation of state law and 16 U.S.C. §§ 3372(a)(2)(A) & 3373(d)(1)(B). Count VII alleged that on or about October 22, 1991, Nystrom sold a bull elk and knowingly made a false game tag affidavit, with the intent to mount and transport the elk in interstate commerce in violation of 16 U.S.C. §§ 3372(d)(2) & 3373(d)(3)(A)(ii).

denied the motion. This court reviews Nystrom's claim of error for an abuse of discretion. *See United States v. Gabaldon*, 91 F.3d 91, 93-94 (10th Cir. 1996) (noting standard of review on motions for new trial is abuse of discretion).[4]

In its order denying dismissal for prosecutorial misconduct, the district court found Nystrom had not presented sufficient evidence that the government had engaged in prosecutorial misconduct. The key case on prosecutorial misconduct is *Webb v. Texas*, 409 U.S. 95 (1972). *Webb* involved a district court's lengthy warning to a witness to tell the truth; the witness later refused to testify.[5] The Supreme Court held that "the judge's threatening remarks, directed only at the single witness for the defense, effectively drove the witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." *Id.* at 98. The ultimate issue is whether a prosecutor's statements result in "such duress that [a] witness could not freely and voluntarily decide to testify . . . , thus depriving [the defendant] of his defense." *United States v. Smith*, 997 F.2d 674, 679 (10th Cir. 1993). Furthermore, "[j]udges and

---

[4]Although Nystrom characterized his motion as a Motion to Dismiss as well as for Judgment of Acquittal and for a New Trial, his motion was merely an amalgam and reiteration of his prior arguments before the district court regarding prosecutorial misconduct and not in fact a motion to dismiss. Thus, because it was essentially a motion for judgment of acquittal and new trial, we apply an abuse of discretion rather than a *de novo* standard of review.

[5]We note that neither *Webb* nor the instant case involved statements made to witnesses in the presence of the jury. *See Webb*, 409 U.S. at 95.

prosecutors do not necessarily commit a *Webb*-type violation merely by advising a witness of the possibility that he or she could face prosecution for perjury if his or her testimony differs from that he or she has given previously." *Id.* at 680.

Based on its examination of each witness, the district court found that the government had made no statements "which exerted such duress on the witness' mind as to preclude any one of them from making a free and voluntary choice whether or not to testify." Dist. Ct. Opin. at 4-5. The government did not suggest the witnesses "testify in any particular way, other than truthfully." *Id.* at 5. Because nothing in the record illustrates the government did anything more than admonish witnesses that they would be prosecuted for perjury if they testified falsely, the district court did not abuse its discretion in denying Nystrom's motion. *See Gabaldon*, 91 F.3d at 93-94.

With respect to Nystrom's assertion of error regarding the *in camera* proceedings, we note the district court first found that the allegations in Nystrom's motion, standing alone, did not support a finding that the government had engaged in misconduct. Nevertheless, the district court proceeded to conduct its own investigation of the witnesses to determine whether such alleged misconduct had occurred.[6]

---

[6]Nystrom claims that with respect to one witness, Delbert Parks, his Fifth and Sixth Amendment rights were violated throughout the trial because he was never permitted to interview Parks about the prosecutorial misconduct at any

Nystrom presents this court with no precedent or authority supporting his claims that the district court's method of investigating charges of prosecutorial misconduct violated his Fifth and Sixth Amendment rights. The government by analogy relies upon jury misconduct cases. In such situations, district courts are accorded broad discretion to develop appropriate procedures for determining the facts necessary to resolve claims of jury misconduct. *See United States v. Santiago*, 977 F.2d 517, 522 (10th Cir. 1992); *United States v. Bradshaw*, 787 F.2d 1385, 1388-90 (10th Cir. 1986).

The district court did not abuse its discretion in its examination of Nystrom's prosecutorial misconduct claims. The procedures the district court employed were essentially fair and did not interfere with Nystrom's right to a "reasonably substantial . . . opportunity to defend against the charge[s]" in the indictment. *Santiago*, 977 F.2d at 522 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)). While neither counsel were allowed to interview or examine the witnesses, they were allowed to be present with their clients and suggest questions for the court. Nystrom has failed to reference any line of

time. We note, however, that the court was unable to interview Parks because he was out of state. The court thus prohibited counsel for either side from interviewing him about the misconduct claims until the court had an opportunity to interview him. Parks was never called as a defense witness, even though the government had offered him use immunity. Because Parks was never called, the prohibition of counsel interviews about that subject remained throughout trial.

proposed questioning which was rejected by the district court. Moreover,

Nystrom has failed to show that any harm resulted from the procedures the court

utilized in conducting its *in camera* interviews and in dealing with the

prosecutorial misconduct claims. We therefore find no error.

## II.    GENERAL SEARCH WARRANT

Nystrom next claims that the government's general search warrant was too

broad and violated his Fourth Amendment rights because it failed to state the

items to be seized with sufficient particularity. Attachment C to the search

warrant described the following items to be seized:

> Business records pertaining to big game outfitting for the years 1987
> through 1992, including but not limited to invoices; receipts; booking
> reservations; copies of applications; client bio-data; client
> correspondence; telephone records; photographs; canceled checks;
> bank records[,] including money transfers and deposit records; credit
> card receipts; hunt contracts; hunt calendars; hunter client schedules;
> diaries; advertisements; news letters; hunting reports; notebooks;
> business ledgers; outfitter license records; guide license records;
> employee records; names; addresses and telephone information for
> outfitter clients; and computer records, including but not limited to
> information or data stored in the form of electronic or magnetic
> coding on computer media or on media capable of being read by a
> computer or computer related equipment. This includes, but is not
> limited to fixed hard disks and removable hard disk cartridges, laser
> disks, magnetic tapes, floppy diskettes, and any other media capable
> of storing digital or magnetic coding containing all or some of the
> above mentioned information for customers, clients, friends, guides,
> and employees.

Record vol. V at 990.

Nystrom also raised this Fourth Amendment issue by motion to the district court. The district court denied his motion. In reviewing the lower court's ruling, we apply the clear error standard to the findings of fact and consider the evidence in the light most favorable to the district court's ruling. *See United States v. Richardson*, 86 F.3d 1537, 1543 (10th Cir.), *cert. denied*, 117 S.Ct. 588 (1996). Questions whether a warrant is overbroad are reviewed *de novo. See United States v. Janus Indus.*, 48 F.3d 1548, 1554 (10th Cir.), *cert. denied*, 116 S.Ct. 87 (1995).

This court finds, as did the district court below, that in light of the breadth of Nystrom's suspected activity, the warrant was sufficiently specific. *See Andresen v. Maryland*, 427 U.S. 463, 478-82 (1976) (broad warrant justified where crime involved complex scheme); *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (warrant describing items to be seized in broad terms may be valid where description is as specific as circumstances and nature of suspected activity permit); *United States v. Robertson*, 21 F.3d 1030, 1033 (10th Cir. 1994) (warrant describing items to be seized in broad terms was valid when description was as specific as circumstances allowed).

The testimony of Special Agent Prieksat, on whose affidavit the search warrant was based, supported the proposition that a broad search was required to uncover the extent and nature of the violations of which Nystrom was suspected.

Specifically, Prieksat testified that based on his experience, outfitters did not always use their business accounts with respect to their clients, but often deposited checks in any bank account. Thus, a search of only Nystrom's business account would have been insufficient. Likewise, according to Prieksat's affidavit, based on his experience that outfitters generally maintained records on hunters in their offices, the broad search warrant would enable the government to identify other potential clients of Nystrom's. Because of the complex nature of the crime and the investigation in this case, we find the district court did not err in finding that the "description set forth in Attachment 'C' to the warrant, was as specific as the circumstances and the nature of the activity under investigation permitted."[7]

III.   COUNT VII ISSUES

   A.   Vagueness of 16 U.S.C. §§ 3372(d) & 3373(d)(3)

---

[7]Nystrom claimed that a small number of items seized were outside the scope of the warrant. The district court found the agents made a good faith attempt to stay within the confines of the warrant. *See United States v. Foster*, 100 F.2d 846, 852-53 (10th Cir. 1996) (officers acted in bad faith and with flagrant disregard for terms of warrant, thus blanket suppression was appropriate remedy). This court finds nothing in the record to support a finding of error with respect to this ruling. Furthermore, the district court appropriately ordered any items seized outside the scope of the warrant to be suppressed and returned to Nystrom immediately. *See United States v. Robertson*, 21 F.3d 1030, 1035 (10th Cir. 1994) (suppressing items taken that were outside scope of warrant).

Next, Nystrom argues that 16 U.S.C. §§ 3372(d) and 3373(d)(3), the statutes underlying Nystrom's conviction of Count VII, are unconstitutionally vague. 16 U.S.C. § 3372(d) provides: "It is unlawful for any person to make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be . . . (2) transported in interstate or foreign commerce." 16 U.S.C. § 3373(d)(3) provides: "Any person who knowingly violates section 3372(d) . . . (A) shall be fined under Title 18, or imprisoned for not more than 5 years, or both, if the offense involves . . . (ii) the sale or purchase, offer of sale or purchase, or commission of an act with intent to sell or purchase fish or wildlife or plants with a market value greater than $350." Although his argument is not elucidated fully, Nystrom appears to claim that the term "involves" is ambiguous.

Whether a statute is unconstitutionally vague is a question of law to be reviewed *de novo*. *See United States v. Murphy*, 977 F.2d 503, 504 (10th Cir. 1992). "The void-for-vagueness doctrine requires that a penal statute define a criminal offense with sufficient specificity that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Meraz-Valeta*, 26 F.3d 992, 997 (10th Cir. 1994). In reaching questions of a statute's unconstitutional vagueness, our inquiry is whether the statute at issue provided a defendant with notice or

-13-

"fair warning" that the conduct contemplated is forbidden by law. *See United States v. Protex Indus. Inc.*, 874 F.2d 740, 743 (10th Cir. 1989).

This court finds, as did the district court, the term "involves" does not deprive the ordinary person of notice or fair warning of prohibited conduct. As the court below noted: "it is clear that when a false record is knowingly submitted in connection with or involving the sale or purchase, offer of sale or purchase, or commission of an act with intent to sell or purchase wildlife with a market value exceeding $350.00[,] a violation of the statutes occurs." We agree.

B.    Court's Response to Jury Inquiry

Nystrom also claims that the district court erred in responding to the jury's question regarding Jury Instruction Number 57 and the meaning of the word "involve." Nystrom does not, however, appear to complain about the jury instruction itself. The standard of review for reviewing the court's response to jury questions is the same as the standard applied to reviewing jury instructions. *See United States v. Castillo*, 844 F.2d 1379, 1391 (9th Cir. 1988). In reviewing Nystrom's challenge to the court's response to the jury's inquiry, we review the record as a whole to determine whether the response stated the governing law and provided the jury with an understanding of the issues and legal standards. *See United States v. Grey*, 56 F.3d 1219, 1222 (10th Cir. 1995). In addition, we reverse convictions "due to an erroneous [response] only if the error was

-14-

prejudicial when viewed in light of the entire record." *United States v. Martin*, 18 F.3d 1515, 1519 (10th Cir. 1994).

Both Nystrom and the government presented proposed responses to the jury inquiry concerning the meaning of the term "involves"; the court rejected both. Instead, the court gave the jury a definition of the word "involves" and admonished it to refer to the instructions to reach its own conclusions. We find nothing in the record to show that the response did not state the law governing the case or was unfair to the parties. *See Durflinger v. Artiles*, 727 F.2d 888, 895 (10th Cir. 1984) (jury instructions did not constitute reversible error because they stated governing law and were fair).[8]

## IV. COUNT VI ISSUES

### A. Insufficiency of Evidence to Convict on Count VI

Nystrom next claims that there was insufficient evidence to support his conviction on Count VI for knowingly and unlawfully selling and causing to be transported in interstate commerce one buck mule deer to Patrick Byrne in violation of Wyoming law. In reviewing a challenge to sufficiency of the

---

[8]Nystrom also appears to argue that his acquittal of Count III and conviction on Count VII are inconsistent. Other than this bare assertion, Nystrom makes no effort to show why those verdicts provide a basis for reversing his conviction. An alleged inconsistency in verdicts, without more, will not as a matter of law support a reversal of a conviction. *See United States v. Powell*, 469 U.S. 57, 64-65 (1984); *United States v. Nelson*, 54 F.3d 1540, 1546-47 (10th Cir. 1995).

evidence, "we are bound to view the proof presented in the light most favorable to the government to ascertain if there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, from which a jury might find a defendant guilty beyond a reasonable doubt." *United States v. Sullivan*, 919 F.2d 1403, 1431 (10th Cir. 1990). In order to determine whether the evidence supporting Count VI was sufficient, we review the record *de novo*. *See United States v. Grimes*, 967 F.2d 1468, 1472 (10th Cir. 1992).

Nystrom specifically claims there was insufficient evidence to prove that Byrne provided Nystrom with any consideration for the deer which was transported out of state to Byrne. The evidence demonstrates that Byrne provided consideration by staying at the outfitters' camp, assisting Nystrom in providing guide services, and removing the game of other hunters. According to the government, this exchange of work at Nystrom's camp for an opportunity to hunt with Nystrom and to use Nystrom's license satisfies the consideration requirement for "sale of wildlife" under 16 U.S.C. § 3372(c)(1). *See United States v. Atkinson*, 966 F.2d 1270, 1273 (9th Cir. 1992) ("sale of wildlife" occurs when, for money or other consideration, person provides "guiding, outfitting, or other services" or "license or permit" for illegal taking of wildlife). The record also reveals evidence that Byrne paid Nystrom $400 for taxidermy services for the deer he shot. Byrne also sent a check for $82.36 to Nystrom to pay for additional

taxidermy services. Finally, the deer was transported to Byrne in California by an employee of Nystrom's.

We find that there was sufficient evidence for a reasonable jury to find that Byrne gave consideration for the use of Nystrom's tag. A reasonable jury could have found that Byrne's assistance to Nystrom, work at the cabin, and payments to Nystrom for taxidermy services were consideration given for the opportunity to hunt and tag a deer.

B.      Court's Response to Jury Inquiry

Nystrom finally claims the district court erred by not responding to a jury inquiry in the manner he requested. Again, we review the record as a whole to determine whether the court's response stated the governing law and provided the jury with an understanding of the issues and legal standards. *Grey*, 56 F.3d at 1222; *see also Castillo*, 844 F.2d at 1391 (standard of review for court's response to jury inquiries same as standard for jury instructions). We reverse convictions "due to an erroneous [response] only if the error was prejudicial when viewed in light of the entire record." *Martin*, 18 F.3d at 1519.

Jury Instruction No. 29 generated the following jury question: whether a "sale of wildlife" under the Lacey Act had "to be agreed upon prior to the beginning of the actual hunt, or could it occur after the kill, *i.e.*, packing the wildlife out?" Nystrom requested the court to answer that "the providing of

services of the illegal taking of wildlife must be agreed upon before the services are performed." The court rejected this proposal, noting that "there are instructions that deal directly with the issue that they've presented me for an answer." The court indicated that it would admonish the jury to consider its instructions as a whole and not to speculate otherwise about the meaning of terms.

Nystrom argues that the jury was requesting a clarification of the timing of the agreement, stating "it is axiomatic that a meeting of the minds must precede performance to distinguish a sale from a gift provided after the fact[, and it is likely that] the jury wondered whether Byrne's gratuitous payment after the fact could serve as the necessary consideration."

The Lacey Act does not provide a definition of consideration or a requirement with respect to the timing of the agreement for a "sale of wildlife." Rather, the Act states only that a "sale of wildlife" occurs when a person offers or provides money or other consideration for guiding or outfitting services or a hunting license for the illegal taking, transporting, or possessing of wildlife. The crime prohibited by the Act is allowing the use of one's license to make the hunt look legal, regardless of when the agreement to use that license takes place. There is thus no statutory basis for the timing of the agreement as asserted by Nystrom. Rather, a jury must only find that there was consideration given for the use of the guide services and license. Consequently, the district court provided

the jury with the proper governing law and an understanding of the applicable issues and standards. Furthermore, Nystrom has failed to show how the district court's response caused him prejudice. Thus, we find the district court did not err by failing to give Nystrom's requested response to the jury's inquiry.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** Nystrom's conviction entered in the United States District Court for the District of Wyoming.

ENTERED FOR THE COURT,


Michael R. Murphy
Circuit Judge