**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 7/26/96**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

STEVE EDWARD GABALDON,

    Defendant - Appellant.

No. 95-2223

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-94-362-LH)**

---

Stephen P. McCue, Assistant Federal Public Defender, Albuquerque, NM, for the Defendant - Appellant.

Mary Catherine McCulloch, Assistant U.S. Attorney (John J. Kelly, United States Attorney, with her on the brief), Albuquerque, NM, for the Plaintiff - Appellee.

---

Before **KELLY**, **BRISCOE** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

We are asked to clarify the standard of appellate review for claimed prosecutorial trial misconduct. Defendant Steve Edward Gabaldon appeals his conviction for burglary, in violation of 18 U.S.C. §§ 1152 and 13 and N.M. Stat. Ann. § 30-16-3(A), and larceny,

in violation of 18 U.S.C. §§ 1152 and 661.  Mr. Gabaldon argues that the district court should have granted his motion for a mistrial on the basis of three instances of prosecutorial misconduct.  We exercise jurisdiction under 28 U.S.C. § 1291.  We affirm.

**I**

Ron and John Abeita, cousins, lived across the road from one another on the Isleta Pueblo, south of Albuquerque, New Mexico.  While working outside in the early evening of November 23, 1993, Ron saw a car pull up to the front door of his cousin's house, about 150 yards away from him.  A man got out and knocked on John's door, walked to his car and then back to the door, and then kicked in the front door and entered the house.

Minutes later, Ron crossed the road and confronted the intruder outside the house. The two men spoke for about fifteen minutes.  The stranger initially denied breaking into the house but, when Ron noticed a television in his car, admitted to doing so.  The man returned the television, promised to pay for the damaged door, and drove away.  Ron immediately called the police.  When Officer Randy Hanes of the Isleta Police Department arrived, Ron described the man and his car, and gave Officer Hanes the car's license plate number.  He described the burglar as between 5'6" and 5'8" tall, wearing blue jeans and a Chicago Bulls jacket.  Defense counsel argues that Defendant Gabaldon is only 5'4", and three witnesses -- all relatives of the Defendant -- testified that Gabaldon never wore blue jeans or team jackets.

The police traced the car to the home of Defendant's aunt, Darlene Williams, who lived in Los Lunas, New Mexico. The car and its license plates matched Ron Abeita's description of the thief's car, and the vehicle identification number was that of the car registered with those plates. Defendant frequently stayed with his aunt for short periods, did not own his own car, and had borrowed his aunt's car on prior occasions. Darlene Williams testified that she had not used the car that night, did not know whether the car had remained where she parked it during the hours in question, and had a habit of leaving the keys in the car.

As a result of a tip from Williams' brother Carl, the police showed Ron Abeita a photo array which included Defendant's picture. Ron chose Defendant's photograph out of the array.

A jury trial was held in the United States District Court for the District of New Mexico. In court, the prosecutor made three statements to which Defendant objected contemporaneously on grounds of prosecutorial misconduct:

> (1) During voir dire of the jury: "There will also be evidence presented by the government in this case that one of the witnesses that you'll hear actually saw part of the burglary and went over and talked with the defendant."

Tr. at 26.

> (2) During the prosecution's opening statement: "Mr. Ron Abeita will testify, the government believes, that he has no doubt in his mind who it was that broke into his cousin's house. And the government, as well, harbors the conviction that after you hear the evidence -- " [At that point, the prosecutor was interrupted by the defense's objection].

- 3 -

Tr. at 51.

> (3) During the prosecution's closing: "Again, the government believes that the evidence demonstrates . . ." [Defense counsel again interrupted to object].

Tr. at 220. To the first objection, the court responded, "Well, that's -- why don't you just ask if any of them know the witness?" Tr. at 26. The court sustained the other two objections. Before the case was submitted to the jury, Defendant's counsel moved for a mistrial on the basis of these statements. The court denied the motion, and the jury found Defendant guilty on both counts of the indictment -- one count of burglary and one count of misdemeanor larceny.

## II

We address a threshold issue concerning the appropriate standard of review. Defendant frames the sole issue on appeal as whether "Mr. Gabaldon was denied a fair trial by repeated instances of prosecutorial misconduct." Appellant's Br. at 9. He asserts that "[a]n allegation of prosecutorial misconduct presents a mixed question of fact and law reviewed de novo." Id.; see, e.g., United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir. 1996). Appellee frames the issue in a different way: "Whether the trial court properly exercised its discretion when it denied appellant's motion for a mistrial based on prosecutorial misconduct." Appellee's Br. at 1. The government points out that we review the denial of a motion for a new trial based on prosecutorial misconduct for abuse of discretion. Id. at 10; see, e.g., United States v. Oles, 994 F.2d 1519, 1524 (10th Cir.

- 4 -

1993).[1]  At oral argument, the United States requested that we clarify the appropriate standard of appellate review when, based on alleged prosecutorial misconduct, defendant has both objected contemporaneously and unsuccessfully moved the district court for a mistrial.  We conclude that an abuse of discretion standard is appropriate.

When prosecutorial misconduct deprives a criminal defendant of a fair trial, the defendant's due process rights are violated, Greer v. Miller, 483 U.S. 756, 765 (1987), and reversal is warranted, Berger v. United States, 295 U.S. 78, 89 (1935); United States v. Lowden, 900 F.2d 213, 217 (10th Cir. 1990).  When a defendant believes that prosecutorial misconduct has occurred, he or she may move for a mistrial.  See Haar, 931 F.2d at 1374.  While the Federal Rules of Criminal Procedure offer little guidance on when judges should grant mistrial motions, we have focused on "'whether . . . [the defendant's] right to a fair and impartial trial was impaired.'" United States v. Torres, 959 F.2d 858, 860 (10th Cir.) (quoting United States v. Pinelli, 890 F.2d 1461, 1473 (10th Cir. 1989), cert. denied, 494 U.S. 1038 (1990)), cert. denied, 506 U.S. 882 (1992).  The defendant may also move for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  "The court . . . may grant a new trial to that defendant if required in

---

[1]      Appellee, citing precedent in which motion for a new trial has been made, apparently assumes that a motion for a mistrial and a motion for a new trial are the same, or are treated the same on appellate review.  Although the Federal Rules of Criminal Procedure indicate that they are different, see Fed. R. Crim. P. 26.3 (Mistrial); Fed. R. Crim. P. 33 (New Trial), appellee is correct in suggesting that the standard of review in both cases is the same.  See, e.g., United States v. Haar, 931 F.2d 1368, 1374 (10th Cir. 1991) (reviewing the denial of a motion for a mistrial based on prosecutorial misconduct for abuse of discretion).

the interest of justice." Fed. R. Crim. P. 33. In other words, if after weighing the evidence and the credibility of the witnesses, the court determines that "the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred," it may grant the defendant's motion. United States v. Evans, 42 F.3d 586, 593 (10th Cir. 1994) (quotation omitted). Both motions for mistrial and new trial call for an examination of the prejudicial impact of an error or errors when viewed in the context of an entire case. This court reviews the trial court's ruling on such motions under an abuse of discretion standard. See Haar, 931 F.2d at 1374; Evans, 42 F.3d at 593.[2]

Where there has been no motion for a mistrial or new trial, the district court has not exercised its discretion, and therefore it is meaningless to look for an abuse of discretion. In such cases, we merely review whether the conduct objected to was indeed improper. Whether prosecutorial misconduct occurred is a mixed question of law and fact, which we review de novo. See, e.g., United States v. Ivy, 83 F.3d at 1288. If we

---

[2]    Defendant relies on United States v. Ramirez, 63 F.3d 937 (10th Cir. 1995), for the proposition that when a defendant makes both a contemporaneous objection and a mistrial motion, the court should employ de novo review. However, in Ramirez, the post-trial motion was a motion to dismiss. Id. at 940. Although that motion was based on prosecutorial misconduct and therefore may have been meant as a motion for mistrial but mislabelled as a motion to dismiss, the opinion is inconclusive on this point and we decline to treat it as controlling in cases where the defendant has moved for a mistrial. We have consistently held -- in handling cases where the defendant has moved for either mistrial or a new trial based on prosecutorial misconduct -- that the appropriate standard of review is the abuse of discretion standard. Evans, 42 F.3d at 593 (motion for new trial based on prosecutorial misconduct was made); Oles, 994 F.2d at 1524 (same); United States v. Hartsfield, 976 F.2d 1349, 1354 (10th Cir. 1992) (same), cert. denied, 507 U.S. 943 (1993); Haar, 931 F.2d at 1374 (motion for mistrial based on prosecutorial misconduct); United States v. Novak, 918 F.2d 107, 108 (10th Cir. 1990) (same); United States v. Butler, 904 F.2d 1482, 1486 (10th Cir. 1990) (same).

conclude that the conduct was improper, we then evaluate whether it warrants reversal.

Id. We make this evaluation as follows:

> A prosecutor's improper statement to the jury is harmless unless there is reason to believe that it influenced the jury's verdict. In assessing whether the misconduct had such an impact, we consider the trial as a whole, including the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case . . . [T]o warrant reversal, the misconduct must have been flagrant enough to influence the jury to convict on grounds other than the evidence presented.

Id. at 1288 (quotations, citations and brackets omitted).

We hold that when the district court has denied defendant's motion for a new trial or for a mistrial, the defendant may not ignore this determination and seek de novo appellate review of the court's ruling on defense counsel's prosecutorial misconduct objection. Rather, the proper course is for this court to review the denial of defendant's motion under an abuse of discretion standard.

**III**

In the present case, Defendant objects to three statements made by the prosecutor. The first, the statement that "[t]here will also be evidence presented by the government in this case that one of the witnesses that you'll hear actually saw part of the burglary and went over and talked with the defendant," occurred during jury voir dire. Defendant characterizes this as "attempt[ing] to argue the case stating Mr. Gabaldon's guilt as a fact." Appellant's Br. at 11. In the other two statements, one of which occurred during the government's opening statement and the other during closing, the prosecutor uttered

the phrase "the government believes" when referring to the evidence. Defendant argues that in doing so the prosecutor impermissibly "interject[ed] her personal belief" into the trial. Appellant's Br. at 3. Although the jury was instructed that the arguments of counsel "are not evidence," tr. at 46, 182, the court did not instruct the jury specifically regarding these utterances.

As discussed above, prosecutorial misconduct may be so egregious as to warrant reversal. Berger, 295 U.S. at 89. In Berger the Supreme Court stated:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . . He may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.
> . . . .
> It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Id. at 88; see also United States v. Young, 470 U.S. 1, 18-19 (1984) (prosecutor's vouching for the credibility of witnesses and expressing personal opinion on defendant's guilt is improper). However, the statements to which Defendant objects here are far from egregious. The first statement was particularly innocuous; beyond conclusory assertions of impropriety, Defendant offers no authority for his claim that it warrants reversal. Furthermore, while we disapprove of a prosecutor personally vouching for the integrity of

government witnesses, see United States v. Primrose, 718 F.2d 1484, 1493 (10th Cir. 1983), cert. denied, 466 U.S. 974 (1984), or asserting a personal conclusion that the defendant is guilty, see United States v. Rios, 611 F.2d 1335, 1343 (10th Cir. 1979), the impact of the second and third statements also appears negligible.

Even assuming an improper comment, "we cannot review this comment in a vacuum." United States v. Manriquez Arbizo, 833 F.2d 244, 247 (10th Cir. 1987).

> [G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and . . . the Constitution does not guarantee such a trial . . . .
> . . . [I]t is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations.

United States v. Hasting, 461 U.S. 499, 508-09 (1983); Manriquez Arbizo, 833 F.2d at 247-48.

The errors which occurred during this trial were minor ones, not warranting "the drastic action of declaring a mistrial." Torres, 959 F.2d at 860. The trial court minimized the damage by sustaining objections and instructing the jury that the arguments of counsel were not evidence. Defendant argues repeatedly that the prosecution built a weak case resting solely on Ron Abeita's testimony, and that the prosecutorial misconduct bolstered that testimony and thus deprived him of a fair trial. However, even without this bolstering, the evidence is quite strong. Abeita faced the burglar at close range for about fifteen minutes, and described the man and car to Officer Hanes. His identification is

supported by the fact that the license plates led the police to Darlene Williams' car, and by Abeita's later selection of Defendant's picture out of the photo array. The car was available to Defendant during the period in which the burglary took place, and the defense's alibi evidence seems unconvincing. Considering the record in its entirety including the prosecutor's statements, we conclude that Defendant received a fair trial -- not a perfect trial, but overall a fair one. The district court did not abuse its discretion in denying his motion for a mistrial.

AFFIRMED.