F I L E D
United States Court of Appeals
Tenth Circuit

NOV 7 1997

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SANTIAGO BALDERRAMA, also
known as Raul Baldarama-Chavez,
also known as Santiago Baldarama,

Defendant - Appellant.

No. 97-1124

(D. Colorado)

(D.C. No. 96-CR-436-Z)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **HENRY**, and **BRISCOE**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore

ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Santiago Balderrama was charged with one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846 and one count of knowingly distributing and aiding and abetting the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2. Balderrama waived his right to a jury trial, and the district court found him not guilty on the conspiracy charge and guilty on the distribution charge. Balderrama appeals the district court's denial of his motion for new trial based on prosecutorial misconduct. We affirm.

## BACKGROUND

At the bench trial, the government presented the testimony of four witnesses. Bennie Lovato was the main government witness to testify against Balderrama. Lovato agreed to cooperate with the government after he was arrested for selling cocaine to an undercover agent, Charles Olachea. He testified at trial that Balderrama was the source of the cocaine he had sold to Special Agent Olachea on four occasions. R. Vol. II at 151. Lovato testified about the first three transactions between himself and Olachea to support the government's charges of conspiracy. See id. at 35-65. He testified about the fourth deal, involving approximately one pound of cocaine, to support both the conspiracy count and the count of a single distribution. Lovato testified that the night before

-2-

he sold the cocaine to Olachea for the fourth time, Balderrama had come to his house with another person and had given him the cocaine to be sold. Id. at 180-82, 200-02.

After Lovato was arrested, the agents searched his house and found approximately one-half ounce of cocaine. Lovato testified that that cocaine came from Balderrama, but not from the delivery the night before. Id. at 164-65. Lovato helped the government to arrest Balderrama by instructing the government agents to call Balderrama's pager and to enter a code that would tell Balderrama the sale was completed and that he could go to Lovato's house to pick up the money. Id. at 152-53. Shortly after the pager was called and the code entered, Balderrama arrived at Lovato's house and they discussed the transaction that had just taken place and then discussed another possible future transaction. The conversation, which was in Spanish and partly inaudible, was recorded and admitted into evidence at trial. R. Supp. Vol. I; R. Vol. II at 155, 159.

Special Agent Olachea also testified at trial. He testified that he had purchased cocaine from Lovato on four occasions. At the last deal, he arrested Lovato and asked him who his supplier was. Lovato told Olachea that he had gotten all of the drugs from Balderrama. R. Vol. II at 34-56. After arresting Lovato, they went to Lovato's house, and Olachea called Balderrama's pager and entered the code Lovato had told him to enter. Id. at 57-58. Approximately 20

minutes later, Balderrama arrived at Lovato's house, where Balderrama and Lovato conversed, and Balderrama was then arrested by Olachea and some other agents. Id. at 58-60.

Special Agent Robert Turner testified that he participated in the arrest of Balderrama at Lovato's house. In searching Balderrama, Turner found a pager which contained the code that Olachea had entered after dialing the pager number some 20 or 30 minutes earlier. R. Vol. II at 225-28. Turner testified that Balderrama denied the pager was his. Id. at 230-31. Balderrama lied to Turner about his identity and about his criminal history. A search of Balderrama's apartment did not reveal anything. Id. at 231-36.

Officer Jason Carrigan testified that a few days prior to Balderrama's arrest at Lovato's house, he had pulled over a car in which Balderrama was a passenger for an unrelated offense. In searching Balderrama, Carrigan found that he had a large amount of cash on his person. Id. at 212-16.

After the government rested, counsel for Balderrama moved for a directed verdict, which the court denied. R. Vol. III at 246-48. After closing arguments, the district court found Balderrama guilty as to the distribution charge and not guilty as to the conspiracy charge.

Prior to sentencing, Balderrama filed a motion for new trial. He alleged that the government violated Fed. R. Crim. P. 16 because it had failed to provide

him with a copy of a written statement given by Lovato to the Drug Enforcement Agency, that the statement bore on the witness's credibility, and that the absence of the statement violated his right to cross-examination under the Sixth Amendment. The government responded by asserting it did not know what statement the defendant was referring to because he had not attached the statement to the motion and that, in any event, a search of its records revealed that it had sent a statement by Lovato to Balderrama's counsel approximately one month before trial. Without a hearing, the court denied the motion because the government was unaware of the statement and so it did not violate Fed. R. Crim. P. 16.

Balderrama subsequently filed an amended motion for new trial, attaching a copy of Lovato's written statement. This motion dropped the allegation that the government had failed to provide the defense with a copy of the statement, but it asserted that the statement contradicted Lovato's trial testimony, that the government intentionally misrepresented the facts at trial, and that the government failed to correct Lovato's testimony. The motion requested a new trial to avoid a severe miscarriage of justice. Before the government filed a response and without a hearing, the court denied the amended motion without comment.

## DISCUSSION

We review a court's denial of a motion for new trial due to prosecutorial misconduct for abuse of discretion.[1]  See United States v. Gabaldon, 91 F.3d 91, 93-94 (10th Cir. 1996); United States v. Hartsfield, 976 F.2d 1349, 1354 (10th Cir. 1992).  "When prosecutorial misconduct deprives a criminal defendant of a fair trial, the defendant's due process rights are violated, Greer v. Miller, 483 U.S. 756, 765 (1987), and reversal is warranted, Berger v. United States, 295 U.S. 78, 89 (1935); United States v. Lowden, 900 F.2d 213, 217 (10th Cir. 1990)." Gabaldon, 91 F.3d at 93.  The trial court reviewing a motion for new trial must focus on whether the prosecutor's conduct had a prejudicial impact such that defendant did not receive a fair and impartial trial because the conduct influenced the trier of fact.  Id. at 93-94; United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir.), cert. denied, 117 S. Ct. 253 (1996); United States v. Torres, 959 F.2d 858, 860 (10th Cir. 1992).  That determination must be made in the context of the

---

[1]Balderrama attempts to style this appeal as a de novo review of the government's conduct.  See Appellant's Br. at 1, 12.  While it is true that we review de novo claims that the prosecution failed to disclose exculpatory evidence, United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir. 1994), Balderrama argued such a failure only in his first motion for new trial and does not make the argument here.  In addition, because we find that the court did not abuse its discretion, we need not address Balderrama's contention that the government has a duty to reveal contradictions in testimony even when the defendant has information available to him which would allow him to elicit the contradiction on cross-examination.

entire record before the trier of fact. Ivy, 83 F.3d at 1288; United States v. Oles, 994 F.2d 1519, 1524 (10th Cir. 1993).

Balderrama bases his argument that the government presented false and substantially misleading testimony at trial on two statements given by Lovato to the DEA. First, Balderrama alleges that Lovato's written statement contradicts his testimony at trial that Balderrama had given him the cocaine the night before Balderrama was arrested. Balderrama points to the written testimony where Lovato says:

> Balderrama came to my house . . . with the same Mexican male who brought 4 ozs. on October 16, 1996. They came inside my house and Balderrama asked me when I was going to do this deal. I told him probably tomorrow morning, because Steve was busy. Balderrama told me to page to him when I got the money. We went downstairs to the red car, the Mexican male lifted the hood and he (Mexican male) got the cocaine out from under the hood and gave it to me. Balderrama was standing on the other side of the car when he did this.

R. Vol. I at tab 21, at 10-11. Balderrama alleges that this statement directly contradicts Lovato's trial testimony where he said that *Balderrama* gave him the cocaine. See R. Vol. II at 151, 180-82, 200-02. Balderrama thus argues that the Mexican male was the source of the cocaine.[2]

_____

[2]The offense for which Balderrama was convicted requires that the defendant "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). 21 U.S.C. § 802(11) equates distribution with delivery, which is defined as "actual, constructive, or attempted transfer
(continued...)

Second, Balderrama alleges that Lovato's trial testimony is contradicted by his written statement about the source of the one-half ounce of cocaine that the agents recovered from Lovato's house. In his written statement, Lovato states:

> [Balderrama and the Mexican male] left and I went inside with the cocaine. The cocaine was packaged in two (2) zip lock bags one inside the other. I took a couple spoonfuls of cocaine out of the bag and put it into a clear plastic bag. I put it in my bedroom and hid it in the ceiling. I took the rest of the cocaine and placed it with the zip lock bags inside a plastic bag and placed it in the refrigerator . . . .

R. Vol. I at tab 21, at 11. This statement, Balderrama alleges, contradicts Lovato's trial testimony that the one-half ounce of cocaine found by the agents at his house did not come from Balderrama's delivery of the night before, but that it was from an earlier Balderrama delivery. See R. Vol. II at 164-65.

Balderrama also argues that the government's closing argument was improper. The government stated:

> The second count in the indictment alleges a specific distribution on October 21. The evidence that supports that distribution is the testimony of Bennie Lovato that the 17 ounces or one pound of cocaine that he tried to sell to Olachea on the 22nd had been delivered to him at his house by Balderrama the night before. That's what Mr. Lovato said about where he got it.

---

[2](...continued)
of a controlled substance." 21 U.S.C. § 802(8). This includes action that was merely supervisory in capacity and does not require the defendant to physically carry the drugs to the buyer or distributer. See, e.g., United States v. Sepulveda, 102 F.3d 1313, 1317 (1st Cir. 1996); United States v. Brunty, 701 F.2d 1375, 1381 (11th Cir. 1983) (collecting cases); United States v. Oquendo, 505 F.2d 1307, 1310 (5th Cir. 1975).

I admit and concede there is no surveillance at that time. I do not recall any other specific evidence about how it is that pound of cocaine got into Lovato's possession; but we know it did because it's in evidence in this court, and we know through Mr. Lovato that Balderrama came over the night before and gave it to him.

R. Vol. IV at 12. Balderrama argues that the government should have revealed the two contradictions at trial and that it was prosecutorial misconduct to conceal them and to exploit the misleading testimony in closing argument.[3]

We are not persuaded the trial court abused its discretion in denying Balderrama's motions for new trial. The statements pointed to by Balderrama may be inconsistent with Lovato's trial testimony, but we are not persuaded they show that the trial testimony was patently false or that the trier of fact found them misleading.

Furthermore, the court did not rely on Lovato's testimony, so even assuming Lovato's testimony was false or misleading, we do not find that the court would have come to a different conclusion had the testimony been corrected. See Ivy, 83 F.3d at 1288. Of Lovato's trial testimony, the court, who was the trier of fact, observed:

---

[3]We note that Balderrama did not object to the prosecutor's closing argument, so the standard on appeal could be a review for plain error. See United States v. Russell, 109 F.3d 1503, 1514 (10th Cir.), cert. denied, 117 S. Ct. 2525 (1997). However, even applying the abuse of discretion standard, Balderrama's argument fails. Because of our disposition, it is unnecessary to address Balderrama's contention that the prosecutor has a duty to reveal contradictions in testimony and that he or she cannot capitalize on the misleading testimony in closing argument.

Mr. Lovato is not a good witness. Now, I'm not saying whether he's not a good witness because he's purposely lying, or because he's old and ill and confused, or because he just has a memory that perhaps is shot because of his use of drugs, or all of the above. . . .

. . . .

Lovato's testimony is not really going to help the Government, because it's not strong enough to carry the day beyond a reasonable doubt; and so the question comes up as to is there enough other corroborative evidence as to Count 1 and as to Count 2.

R. Vol. III at 270-72. The court then found that there was not enough corroborating evidence as to the conspiracy count, but that several things corroborated the single distribution charge. Id. at 272-73, 276-77. The court cited the fact that it was Balderrama who came to Lovato's house when the agents called the pager, Balderrama had the pager on him when he came to the house, and the recorded conversation between them indicated a deal with Olachea involving 16 ounces. Id. at 273-77.

Because Lovato's trial testimony was neither false nor misleading, and because the court gave the testimony little weight, we hold that the court did not abuse its discretion in denying the motions.

AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge
