**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 5 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DONNIE COLLINS,

      Defendant-Appellant.

No. 01-8096
(D. Wyoming)
(D.Ct. No. 00-CR-176-03-B)

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GORDON SHAFFER,

      Defendant-Appellant.

No. 01-8097
(D. Wyoming)
(D.Ct. No. 00-CR-176-04-B)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, Circuit Judge, **McWILLIAMS**, and **ANDERSON**, Senior Circuit Judges.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

In a superseding indictment (indictment) filed May 23, 2001, Donnie Collins and Gordon Shaffer, together with three other individuals (Paula Friend, Rebecca Stout and Paul Levasseur), were charged with conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)-(C), and 846. The charged conspiracy was alleged to have occurred between the approximate dates of November 1998 and June 2000. Collins and Shaffer were convicted by a jury on August 23, 2001.[1] In each case, the jury found the amount of methamphetamine involved in the conspiracy was 50 grams or more, but less than 500 grams, triggering the penalty provisions of 21 U.S.C. § 841(b)(1)(B), which include imprisonment for not less than five or more than forty years. Collins was sentenced to eighty-four months imprisonment; Shaffer was sentenced to ninety-seven months imprisonment. They appeal their convictions and sentences. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm in part and dismiss in part.

---

[1]The three other defendants pled guilty to the charges before trial under plea agreements.

*Background*

The charged coconspirators, together with others, received and redistributed methamphetamine in northeastern Wyoming and southeastern Montana. As the Government stated in the "Prosecutor's Statement" submitted to the U.S. Probation Office in aid of preparation of each presentence investigation report (PIR), "over time, the Defendants and their coconspirators each acted as both a source and a customer for each other." (Shaffer Appellant App. at 265.) "[M]ost of the methamphetamine involved in this case flowed from Friend's source, to Friend, to her codefendants, to her unindicted coconspirators, and to the group's customers." (*Id.* at 266.) "[W]hen Friend could not obtain methamphetamine from her source the 'group' relied on each other to supply use and distribution quantities of methamphetamine." (*Id.* at 267**.**) Collins agrees in his brief, describing the group as one that "bought and sold methamphetamine to and from each other, depending solely on who had methamphetamine at the particular point in time." (Appellant Br. at 4.)[2] In short, the ring was a clearinghouse for the distribution of small but regular amounts of methamphetamine.

For Shaffer, the PIR evidenced relevant conduct involving 560 to 1109.5 grams of methamphetamine, resulting in a base offense level of 32 for purposes of

---

[2]References to Collins' Appellant's Brief are to Collins' Appellant's Corrected Opening Brief.

sentencing.  United States Sentencing Commission, *Guidelines Manual,* §
2D1.1(c)(4) (Nov. 1998).  Nonetheless, the district court hewed to the jury's
finding that 50 to 500 grams of methamphetamine were involved in the conspiracy
and found by a preponderance of the evidence that Shaffer's relevant conduct
involved 350 to 500 grams of methamphetamine, resulting in a base offense level
of 30.  *Id.* at § 2D1.1(c)(5).  With no further adjustments and a criminal history
category of I, Shaffer's guideline range was 97 to 121 months.  *Id.* at Ch.5, Pt.A,
Sentencing Table.  The court sentenced at the low end of the range.[3]

For Collins, the PIR evidenced relevant conduct involving 306.6 to 360.1
grams of methamphetamine, resulting in a base offense level of 28.  *Id.* at §
2D1.1(c)(6).  The district court, though, found by a preponderance of the evidence
that the relevant conduct involved at least 50 but less than 200 grams of
methamphetamine, resulting in a base offense level of 26.  *Id.* at § 2D1.1(c)(7).
Collins' level was then adjusted upward by two for obstruction of justice.  *Id.* at §
3C1.1.  With a total offense level of 28 and a criminal history category of I,
Collins fell into a guideline range of seventy-eight to ninety-seven months.  *Id.* at
Ch.5, Pt.A, Sentencing Table.  The court denied safety valve relief, USSG §
5C1.2, and sentenced mid-range.

---

[3]When Shaffer and Collins were sentenced, it was the policy of the U.S.
Probation Office, in cases involving a range of drug quantity, to use the low end
of the range in calculating the base offense level.

In this consolidated appeal, Collins and Shaffer, in turn jointly and individually, challenge their convictions on the grounds of evidentiary errors, prosecutorial misconduct and ineffective assistance of counsel, and their sentences on the grounds of a miscalculation of relevant conduct and failure to accord safety valve relief under the sentencing guidelines. We take up these issues seriatim.

***Discussion***

## I. Challenges to the Convictions

### A. *Evidentiary Issues*

We review evidentiary rulings for abuse of discretion. *United States v. Jenkins,* 313 F.3d 549, 559 (10th Cir. 2002), *cert. denied,* 538 U.S. 1006 (2003). Under this standard, "we will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment." *Id.* Even if we identify error, we will not reverse if the error is harmless. *United States v. Wittgenstein,* 163 F.3d 1164, 1172 (10th Cir. 1998), *cert. denied,* 527 U.S. 1012 (1999). Error is harmless unless it affects substantial rights. Fed. R. Crim. P. 52(a); 28 U.S.C. § 2111. Evidentiary error is non-constitutional. *United States v. Magleby,* 241 F.3d 1306, 1317 (10th Cir. 2001). We deem non-constitutional error harmless "unless it had a substantial influence on the outcome or leaves one

in grave doubt as to whether it had such an effect." *United States v. Richardson,* 86 F.3d 1537, 1550 (10th Cir. 1996) (quotation marks omitted), *cert. denied,* 519 U.S. 1030 (1996). We determine de novo whether error is harmless. *Id.*

Absent objection, we review instructional misstatement or omission for plain error. Fed. R. Crim. P. 30(d). To qualify for relief, plain error must affect substantial rights. Fed. R. Crim. P. 52(b); *United States v. Bailey,* 286 F.3d 1219, 1222 (10th Cir.), *cert. denied,* 537 U.S. 877 (2002). "An appellate court should exercise its discretion to correct plain error only if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks omitted).

### 1. Inextricably Intertwined Evidence

The Government called a number of witnesses at trial who testified to methamphetamine dealing activities of Collins and Shaffer which pre-dated the period of the charged conspiracy by, in some instances, several years.[4] In an effort to assure this testimony would be allowed at trial, the Government filed a "Notice of Intent to Use 'Inextricably Intertwined' Evidence of Methamphetamine Transactions." In this notice, the Government contended any testimony its

---

[4]At trial, the Government acknowledged its error in failing to seek an indictment based on a broader conspiracy time frame. On appeal, it again expresses repentance that "the superseding indictment erroneously alleges the conspiracy began in November 1998, not in 1995 as it should have." (Appellee Br. at 12**.)**

witnesses might provide as to methamphetamine transactions outside the time frame of the charged conspiracy constituted direct evidence of the conspiracy. It stated the witnesses would testify to transactions involving the same controlled substance, the same parties, and the same modus operandi as those occurring within the charged time frame. Put another way, the Government characterized the evidence as intrinsic to the charged crime or inextricably intertwined with it, as "reasonably necessary to complete a witness's story regarding the charged conspiracy." (Shaffer Appellant App. at 50.) In the alternative, the Government argued the testimony was evidence of "other acts" under Fed. R. Evid. 404(b).[5] Collins and Shaffer filed a joint response opposing the characterization of the testimony as inextricably intertwined and decrying it as not meeting the test for admission under Rule 404(b). The parties make the same arguments on appeal.

The court conducted a hearing in limine and allowed the testimony as inextricably intertwined with proof of the conspiracy itself. As the court put it, the testimony "may be necessary to explain the relationship of the parties . . . ." (Shaffer Appellant App. at 150.) However, it requested defense counsel to prepare an instruction emphasizing the testimony should not be considered as evidence of guilt but only as "explanatory of the predisposition, if you want to

---

[5]Since we conclude the evidence was properly admitted as inextricably intertwined with the charged crime, we do not reach the alternative argument.

call it that, of the defendants, if any, toward the drug market." (*Id.*)[6]

> Rule 404(b) only applies to evidence of acts extrinsic to the charged crime. An uncharged act may not be extrinsic if it was part of the scheme for which a defendant is being prosecuted, or if it was inextricably intertwined with the charged crime such that a witness' testimony would have been confusing and incomplete without mention of the prior act.

*United States v. Record,* 873 F.2d 1363, 1372 n.5 (10th Cir. 1989) (citations and quotation marks omitted). "Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Lambert,* 995 F.2d 1006, 1007 (10th Cir.) (quotation marks and citation omitted), *cert. denied,* 510 U.S. 926 (1993). Intrinsic other act evidence, although by definition relevant to the crime charged, is still subject to exclusion "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403; *see also Lambert,* 995 F.2d at 1007-08.[7]

---

[6]The record reflects Shaffer's trial counsel submitted a proposed instruction on inextricably intertwined evidence that the court delivered to the jury as Instruction No. 26A ("The Defendants are not on trial for any act or any conduct not alleged in the indictment." (Collins R. Vol. I, Doc. 180)). Moreover, trial counsel for Shaffer and Collins relied upon Instruction No. 26A in their closing arguments. (Collins R. Second Supplemental Vol. I at 25, 30, 40-41.)

[7]One treatise has described the rule of inextricably intertwined evidence as one of "contextual relevance," the purpose of which is "to complete a picture by providing context and meaning for the central events . . . ." Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 111(B) (2d ed. 2003).

With these principles in mind, and after an exhaustive review of the record, we conclude the challenged testimony about methamphetamine-dealing activities of Shaffer and Collins outside the window of the charged conspiracy is intrinsic to the crime charged and the court did not clearly err in admitting it. We first observe that although the indictment temporally frames the charged conspiracy, it does not preclude the existence of an uncharged conspiracy or putative conspiracy prior to the charged term. And this is precisely what the testimony established. Prior to 1998, Collins and Shaffer had known each other for several years, dealt methamphetamine between themselves and with at least two of the indicted co-conspirators, and did so according to a pattern replicated during the term of the charged conspiracy. While the Grand Jury could easily have expanded the conspiracy window to include most if not all of the prior acts (if the Government had presented the appropriate evidence), it did not. Nevertheless, testimony about the pre-1998 acts clarified and completed for the trial jury the picture of the

---

Although such evidence should be approached with caution,

> [i]n cases that approve use of other crimes to provide context, some clear utility can be seen when the other crimes show concerted or cooperative action by several defendants, which may support inferences that they planned the venture and inferences about the roles that each played, and may explain relationships and transactions that would otherwise be harder to understand.

*Id.*

interrelationship of the conspirators. *Record,* 873 F.2d at 1372 n.5. As the Government argues in its brief, the evidence was offered "to prove the beginning stages of the conspiracy, how it developed, and how it continued." (Appellee Br. at 13.) Viewed in this light, the prior acts were admissible as "preliminar[y] to the crime charged." *Lambert,* 995 F.2d at 1007. Or, as the district court aptly put it, the parties were "warming up for the big acts[.]" (Shaffer Appellant App. at 143.)

In *United States v. Wacker,* 72 F.3d 1453 (10th Cir. 1996), a case in which defendants were charged with multiple drug trafficking offenses alleged to have occurred around 1990, including conspiracy, we allowed admission of prior bad acts against one of the defendants (under Fed. R. Evid. 404(b)) dating from 1977, 1980, 1981, 1982 and 1984. Although the prior acts were similar to the 1990 charged crime in that they all involved marijuana, they were materially dissimilar from the charged crime in that they (a) involved persons not named in the 1990 indictment as co-defendants, and (b) evidenced activity significantly different in kind from that charged in the 1990 indictment. Nonetheless, we held:

> Although the bad acts testified to at trial occurred well before the offenses charged in the indictment, the prosecution used this testimony to show a long-standing pattern of drug activity from the late 1970s up until the time of appellants' arrest in 1990. Viewed in this light, the evidence is not unrelated and remote, but is integrally related to the criminal activity charged in the indictment.

*Id.* at 1469 (citing to *Record,* 873 F.2d at 1372 n.5, and noting that "uncharged

prior acts that are 'inextricably intertwined' with the charged crime are admissible"); *see also United States v. O'Brien,* 131 F.3d 1428, 1432 (10th Cir. 1997) (allowing other acts as evidence relating to a period outside that charged in a conspiracy indictment because the evidence was "intertwined" with acts charged). By comparison, the instant case involves prior acts that are virtually indistinguishable in kind from the charged activity and for the most part involve the same parties. Based on our precedent, then, the court did not abuse its discretion in admitting them as inextricably intertwined evidence.

Finally, the evidence does not violate Rule 403. While admission of the disputed evidence was prejudicial, as is true of all evidence adduced against a defendant, it was not unfairly so. It merely replicated evidence of acts that occurred during the temporal frame of the charged conspiracy, evidence that was compelling and sufficient on its own to sustain the convictions.[8]

### 2.     **Admission of Kitty Riggs Testimony Under Rule 404(b)**

Kitty Riggs testified to the following. She first met Collins in 1994 or 1995, when she was a fifteen-year-old high school student and he was twenty-six years old. At their first meeting, he introduced her to methamphetamine and she

---

[8]Neither Shaffer nor Collins argues the evidence within the temporal frame of the charged conspiracy was insufficient to support conviction. This being so, and in light of the strength of that evidence, even if we were to find admission of the disputed testimony was error, it was harmless. *Richardson,* 86 F.3d at 1550.

became addicted. Within a few months, she moved in with him, and the two had a sexual relationship. She continued to use methamphetamine, provided by Collins, at a rate of about a gram a day. She was a witness to methamphetamine transactions involving Collins, Shaffer and Friend. She observed Collins measure out methamphetamine, weigh it and package it for distribution. She witnessed him deliver the drug to friends her age, some of whom were still in high school. Their relationship lasted about two years, ending before the time frame of the charged conspiracy.

The Government proffered Riggs' testimony under Rule 404(b). At the conclusion of a two-part hearing in limine to consider the evidence, and over objection that it was remote, cumulative and prejudicial, the court allowed the testimony and orally gave this limiting instruction to the jury before the testimony was adduced:

> And in connection with the testimony of Miss Riggs, the Court instructs the jury that you're going to hear some testimony that does not refer to the specific times of this conspiracy, which was November '98 to June 1, 2000, but concerns a prior time frame. And this is evidence of an act or acts that were done at some other time, *but the evidence is received because the Court thinks it may or may not show a propensity to have performed a similar act or a similar offense during the times charged in the superseding indictment.*

> The evidence of a similar act or offense may not be considered by the jury in determining whether the defendants actually performed physical acts charged in this superseding indictment, and such evidence also may not be considered for any other purpose whatsoever, unless the jury first finds beyond reasonable doubt, from other evidence in the case standing alone

-12-

that the defendants physically did the acts charged in [the] superseding indictment.

If the jury should find beyond a reasonable doubt from other evidence in the case that the defendants did the act or acts alleged in the particular superseding indictment under consideration in this case, the jury may then consider evidence as to an alleged earlier act of a like nature in determining the state of mind or intent with which the defendants actually may have done the act or acts charged in the superseding indictment.

And, of course, I must add that the defendants are not on trial for any acts or crimes not alleged in the superseding indictment, nor may a defendant be convicted of the crimes charged, even if you were to find that they committed other crimes, even crimes similar to the ones charged in the superseding indictment.

(Shaffer Appellant App. at 154-55) (emphasis added).

Neither Collins nor Shaffer objected to the oral instruction before or after it was given. Other than Instruction 26A,[9] no part of the quoted instruction was repeated in the court's charge to the jury (written and oral) at the close of the case. Neither Collins nor Shaffer objected to this omission or offered a 404(b) instruction. Nevertheless, they now complain the court erred in its choice of language in the oral instruction and they link that error to the admission of Riggs' testimony, to which they did object.

Prior bad acts are, of course, inadmissible to "prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). In

---

[9]*See* n.6.

other words, they are inadmissible to show propensity to commit a crime. Prior

bad acts are admissible, however, "for other purposes, *such as* proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake

or accident . . . ." *Id.* (emphasis added). Excluding identity, it was for each of

these stated purposes that the Government offered Riggs' testimony. The test for

404(b) admission is this:

> (1) the evidence is offered for a proper purpose under Fed.R.Evid.
> 404(b); (2) the evidence is relevant under Fed.R.Evid. 401; (3) the
> probative value of the evidence is not substantially outweighed by its
> potential for unfair prejudice under Fed.R.Evid. 403; and (4) the
> district court, upon request, instructs the jury to consider the
> evidence only for the purpose for which it was admitted.

*United States v. Tan,* 254 F.3d 1204, 1207 (10th Cir. 2001).

Collins concedes the testimony was offered for a proper purpose. However,

he contends the district court admitted it for an additional, improper purpose, that

being to show propensity. He also argues the evidence was not relevant because

it was remote in time. Finally, he argues it was inflammatory and prejudicial.

Shaffer joins in arguing this last point.

In arguing Riggs' testimony was admitted for an improper purpose (in

addition to a concededly proper one), Collins points to this remark by the court at

the conclusion of the liminal hearing on the admissibility of the testimony:

> I'm inclined to think that the evidence under 404(b) may be
> admissible for the purpose of proving a propensity and to proving a
> prior involvement of the Defendant Collins with the Defendant

> Shaffer, and also with Paula Friend, and that that tends to show the likelihood of this having continued during the period of the conspiracy.

(Shaffer Appellant App. at 200.)  The choice of the word "propensity" was error, but the error is more technical than real.[10]  From the record as a whole it appears the court employed the word "propensity" in the same sense it employed the word "predisposition" in admitting the inextricably intertwined evidence.  There, the court explained it was admitting the evidence because it "may be necessary to explain the relationship of the parties . . . ."  (*Id.* at 150.)  Clearly, the court intended, in its use of the word "propensity," as it did in its earlier use of the word "predisposition," to convey the thought that the evidence was admissible for the purpose of explaining the relationship of the parties in the context of the drug market, not for the purpose of proving the bad character of the defendants in order to show they acted in conformity therewith.  Viewed in context, the evidence was properly admitted.

We are bolstered in our conclusion by the fact that the Government did not offer Riggs' testimony as an artifact of propensity; nor did it serve this purpose.  To the contrary, it served the admittedly proper purposes for which it was offered (motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or

---

[10]We observe the court's phraseology was of such minor moment that it passed unremarked at the time.

accident) and was consistent with other evidence the Government introduced as inextricably intertwined (*see infra.* pp. 6-11). Riggs' testimony fits comfortably within our observation that Rule 404(b) "is one of inclusion, rather than exclusion . . . ." *United States v. Segien,* 114 F.3d 1014, 1022 (10th Cir. 1997), *cert. denied,* 523 U.S. 1024 (1998). In the absence of an avowed purpose by the Government to show propensity or a surreptitious use of the testimony as an artifact therefor, as proscribed by Rule 404(b), we identify no error.

As to Collins' claim that Riggs' testimony was not relevant under Rule 401 because it was remote in time, we disagree. The testimony evidenced a modus operandi and interrelationship with other players "integrally related to the criminal activity charged in the indictment." *Wacker,* 72 F.3d at 1469. We are more troubled by the claim that it was unfairly prejudicial under Rule 403. "Evidence is unfairly prejudicial when it has an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one." *Magleby,* 241 F.3d at 1315 (quotation marks and citation omitted). At the first liminal hearing on the admissibility of Riggs' testimony, the court had understandable misgivings about the prejudicial effect of the testimony: "Looks like that's just trying to smear him . . . . [I]t looks like it's just designed to make him look like a bad person for chasing after high school girls." (Shaffer Appellant App at 151-52.) Exercising caution, the court withheld ruling on the

admissibility of the testimony until it heard the balance of the Government's case. After it did, and after additional liminal argument, the court changed its mind and decided to allow the testimony. The court's considered approach to the evidence manifests the careful weighing process Rule 403 requires. "The district court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value." *Magleby* at 1315 (quotation marks and citation omitted). When we review for abuse of discretion, "we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value." *Id*. Exercising this deference, we identify no abuse of discretion in the admission of Riggs' testimony. It was consistent with the testimony of other witnesses, and showing the established pace and pattern of drug sales among conspirators is a purpose permitted under Rule 404(b). The district court could reasonably conclude the probative value outweighed the risk of unfair prejudice.

Having concluded the testimony was properly admitted, we now turn to the court's oral instruction to the jury as it prepared to hear Riggs' testimony, which we review for plain error. Fed. R. Crim. P. 30(d). There is some dispute in the briefs as to whether the first paragraph of the instruction was actually part of the instruction or only a preamble. For purposes of our discussion, the distinction is immaterial. The use of the term "propensity" in the context of explaining an

-17-

explicit purpose for the evidence is contrary to Rule 404(b).  We are not concerned with an unintentional misuse of the term during liminal proceedings when we are otherwise able to discern the true intent of the court.  But the use of the term in an instruction to the jury is another matter.  A jury, unversed in legal theory and semantics, is not equipped, let alone likely, to recognize and accommodate the misuse of a term of art.  It is more likely to accept an instruction in its literal form.

Even so, we do not believe that error in one sentence of a lengthy (and otherwise correct) oral instruction, although plain, affected substantial rights, Fed. R. Crim. P. 52(b), for it did not "seriously affect[] the fairness, integrity, or public reputation of [the] judicial proceedings."  *Bailey,* 286 F.3d at 1222 (quotation marks omitted).  The record as a whole, sans Riggs' testimony and the erroneous instruction, abundantly supports the convictions.  Moreover, the correct language in the instruction, which constitutes the bulk of it, contradicts the erroneous phrase and substantially tracks the pattern instruction on the proper use of Rule 404(b) evidence.  *See* 1A Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 17.08 (5th ed. 2000).  Finally, the offending language was orally conveyed to the jury and never matured into a written instruction, thus diminishing any eventual influence it may have had.  Notably, counsel did not object at the time or seek a curative instruction

when the jury was finally charged,[11] possibly because they did not wish to further spotlight Riggs' testimony or because the magnitude of the error is merely a product of cultivated retrospection.

### B. *Prosecutorial Misconduct*

Collins gave a proffer to the Government on July 2, 2001. But the Government terminated the interview when it concluded Collins was not being truthful. Collins' counsel was present. At trial, Collins testified. In redirect examination, he claimed he told the truth in his proffer, although he indicated he wished to amend some of the dates contained in it. In doing so, and in confirming other dates, he sought to remove himself from drug activity during the term of the charged conspiracy, while admitting drug activity at earlier times.

During re-cross examination, Collins testified his defense was that while he was involved in drug transactions between 1989 and 1998, he was not involved in drug transactions during the term of the charged conspiracy (November 1998 to June 2000). At this point, the Government attempted to impeach Collins with respect to his truthfulness in the proffer, pointing out that even his own counsel did not believe the statements he gave on July 2, 2001: "Q. Well, in that proffer, seemed to me that your lawyer didn't believe you either, did she? Did she? A.

---

[11]The defendants did rely on the limiting language of Instruction 26A in their closings. *See* n.6.

Most of it, yeah.  Q.  She didn't believe you were telling the whole truth, right?" (Collins R. Vol. Twelve at 884.)  This elicited an objection on the grounds the question called for speculation.  The court sustained the objection.  The Government continued:  "Q.  She [defense counsel] told you in front of me and the agents that she didn't believe you, didn't she?  A.  I don't recall that."  (*Id.* at 884-85.)  This last question and answer elicited no contemporaneous objection. The next day, defense counsel lodged an objection to the entire colloquy and requested the court to admonish the Government "to refrain [in closing argument] from any comments that would either attack my representation or my belief in my client's defense or his statements."  (Collins R. Vol. Thirteen at 923.)  While not necessarily agreeing with defense counsel's characterization of the previous day's examination, the court provided the defense with the full measure of relief requested by admonishing the Government, which complied—it made no reference to defense counsel in its closing.

Based on the challenged colloquy, defense counsel did not move for a mistrial or a new trial.  Nor did she move to strike the tainted colloquy or request a curative instruction.[12]  On appeal, Collins argues the Government's suggestion that his counsel did not believe him amounted to prosecutorial misconduct

---

[12]Instruction No. 5 in the general charge to the jury included this stock language:  "Questions, objections, statements, and arguments of counsel are not evidence in the case . . . ."  (Shaffer R. Vol. One, Doc. 180.)

depriving him of both a fair trial under the Fifth Amendment and his right to effective assistance of counsel under the Sixth Amendment.

We review for abuse of discretion the denial of a motion for mistrial or a new trial based on prosecutorial misconduct to which defense counsel has contemporaneously objected. *United States v. Gabaldon,* 91 F.3d 91, 93-94 (10th Cir. 1996). Where there is objection but no request for a mistrial or new trial, we review de novo the question whether prosecutorial misconduct has occurred. It is a mixed question of law and fact. *Id.* at 94. If we determine misconduct occurred, we apply harmless error analysis. *Id.*

> A prosecutor's improper statement to the jury is harmless unless there is reason to believe that it influenced the jury's verdict. In assessing whether the misconduct had such an impact, we consider the trial as a whole, including the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case. We ordinarily will not reverse if the misconduct was merely singular and isolated. Rather, to warrant reversal, the misconduct must have been flagrant enough to influence the jury to convict on grounds other than the evidence presented.

*United States v. Ivy,* 83 F.3d 1266, 1288 (10th Cir.) (quotation marks and citations omitted), *cert. denied,* 519 U.S. 901 (1996). Where there is no objection to prosecutorial misconduct, we review for plain error affecting substantial rights. Fed. R. Crim. P. 52(b). The same standard applies in the case of omitted instructions where no objection is lodged. Fed. R. Crim. P. 30(d).

Generously assuming Collins' belated objection to the alleged prosecutorial

misconduct preserved review, and further assuming, without deciding, that the challenged colloquy amounted to misconduct, we conclude any error was harmless. In *United States v. Caballero,* 277 F.3d 1235, 1244 (10th Cir. 2002), summarizing our holding in an earlier case, *United States v. Short,* 947 F.2d 1445 (10th Cir. 1991), *cert. denied,* 503 U.S. 989 (1992), we noted: "In view of the overwhelming evidence of the defendant's guilt, the solitary, isolated nature of the prosecutor's remark, and the defense counsel's decision not to seek a limiting instruction or have the statement stricken . . . the remark did not substantially influence the verdict." So too in this case, where, as we noted earlier, the evidence presented to the jury was otherwise abundant and more than sufficient to sustain the convictions. Viewing the trial record as a whole, including the court's curative admonition, which was the precise relief requested by defense counsel and was heeded by the Government, we conclude any overzealousness was isolated and without significant effect on the verdict. The trial court's failure to *sua sponte* give a curative jury instruction was harmless, if error at all.

### C.    *Ineffective Assistance of Counsel*

Now represented by new counsel on appeal, Shaffer claims his trial counsel was ineffective. His claims revolve around failure to cross-examine or meaningfully cross-examine Government witnesses, a flawed opening statement and failure to present a defense.

"Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway,* 56 F.3d 1239, 1240 (10th Cir. 1995); *see also Massaro v. United States,* 123 S. Ct. 1690, 1693-94 (2003) (raising ineffective assistance of counsel claims through collateral review is the preferred procedure). This rule enables development of a factual record, where necessary, and permits challenged counsel to offer his or her reasons for decisions made at trial; it also enables the district court, often the same court to have observed the trial proceedings, to first rule on the claim. *Galloway,* 56 F.3d at 1240. These factors are inestimable aids to appellate review. "[I]n rare instances an ineffectiveness of counsel claim may need no further development prior to review on direct appeal." *Id.* The claims Shaffer asserts do not fall into this exceptional category and are thus dismissed without prejudice to a later motion brought under 28 U.S.C. § 2255.

## II. Challenges to the Sentences

We review de novo the district court's interpretation and application of the U.S. Sentencing Guidelines, *United States v. Tisdale,* 248 F.3d 964, 975 (10th Cir. 2001), *cert. denied,* 534 U.S. 1153 (2002), and we review its findings of fact for clear error. 18 U.S.C. § 3742(e). Failure to object to factual inaccuracies at sentencing waives appellate review. *United States v. Green,* 175 F.3d 822, 837-

38 (10th Cir.), *cert. denied,* 528 U.S. 852 (1999). Nor is there safe haven in plain error, since "factual disputes not brought to the attention of the court do not rise to the level of plain error." *United States v. Castorena-Jaime,* 285 F.3d 916, 926-27 (10th Cir. 2002).

### A.    *Safety Valve Relief*

Collins asserts as error the failure of the court to grant him safety valve relief under USSG §§ 5C1.2 and 2D1.1(b)(6). Safety valve relief refers to statutory and guideline authority for the sentencing court to sentence beneath a statutory mandatory minimum sentence. 18 U.S.C. § 3553(f); USSG § 5C1.2. The language of § 2D1.1(b)(6) permits a two-level decrease in offense level if the defendant meets all of the prerequisites of § 5C1.2. The disputed prerequisite is stated in subsection (a)(5):

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

USSG § 5C1.2(a)(5). The question is whether Collins satisfied this prerequisite. We conclude he did not.

The record demonstrates that Collins prevaricated in his July 2, 2001 proffer to the Government. Furthermore, his testimony at trial was at clear

variance with the testimony of his confederates. As the court noted in considering the request for safety valve relief, "I think the evidence in the case clearly shows that Mr. Collins was buying, selling and sharing methamphetamine between November '98 and June 1, 2000. There's just no gainsaying that in my mind." (Collins R. Vol. Two at 23.) Yet, Collins testified to the contrary, apparently in an effort to avoid responsibility for criminal acts within the temporal frame of the charged conspiracy. This scenario does not paint a picture, prior to sentencing, of Collins having "truthfully provided to the Government all information and evidence the defendant has concerning the offense." USSG § 5C1.2(a)(5). Therefore, the court's determination that Collins did not meet the disputed prerequisite for safety valve relief is not clearly erroneous.

### B.    Drug Quantity

The Government must establish by a preponderance of the evidence the quantity of drugs for which a defendant should be held accountable as relevant conduct under USSG § 1B1.3. *Green,* 175 F.3d at 836-37.

Collins objected to the base offense level of 28 set by the PIR. It was set on the basis of relevant conduct of 306.6 to 360.1 grams of methamphetamine. Instead, he argued for a base offense level of 26 on the basis of relevant conduct of at least 50 but not more than 200 grams of methamphetamine. He restated his objection at sentencing. The court sustained his objection and set a base offense

level of 26.[13]  As might be expected, Collins did not object.  Notwithstanding this record, on appeal Collins adopts Shaffer's argument that the court erred in setting the base offense level.  This argument is both perplexing and without merit given the fact that the court acceded to Collins' initial objection.  There being no record of other objection, the issue is not preserved for appeal and we decline to review it.  *Id.* at 837-38.  Plain error does not lie.  *Castorena-Jaime,* 285 F.3d at 926-27.

In Shaffer's case, the PIR set his base offense level at 32 on the basis of relevant conduct involving 560 to 1109.5 grams of methamphetamine.  At sentencing, Shaffer objected and requested the court set an amount equivalent to that set in Collins' case.  The court, on the basis of its notes of testimony adduced at trial, found by a preponderance of the evidence that the relevant conduct involved 350 to 500 grams of methamphetamine and thus reduced the base offense level to 30.  Shaffer contends there was no basis for this finding.  We beg to differ.  Our review of the testimony adduced at trial suggests substantial

---

[13]The colloquy between Collins' counsel and the court is confusing and calls to mind the adage "two ships passing in the night."  Collins' counsel begins her argument by suggesting the PIR set a base offense level of 30 on the basis of at least 350 grams but less than 500 grams of methamphetamine.  This is incorrect.  The PIR set a base offense level of 28 on the basis of at least 200 grams but less than 350 grams of methamphetamine.  It was the total offense level that was set by the PIR at 30 (it included a two-level enhancement for obstruction of justice under USSG § 3C1.1).  When the court agreed to reduce the base offense level by two, it effectively reduced it to 26, exactly as requested by Collins.  Since the court declined to remove the two-level enhancement for obstruction of justice, the total offense level resolved at 28.

evidence to support the district court's decision, and it was thus not clearly erroneous.

*Conclusion*

Accordingly, we **DISMISS** without prejudice Shaffer's claim of ineffective assistance of counsel and **AFFIRM** the judgment of the district court in all other respects.

Entered by the Court:

**TERRENCE L. O'BRIEN**
United States Circuit Judge