**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Carl E. DIXON, Defendant–Appellant.**

No. 01–3068.

United States Court of Appeals,
Tenth Circuit.

April 12, 2002.

**544**

Before SEYMOUR, ALARCÓN,* and ANDERSON, Circuit Judges.

ORDER AND JUDGMENT **

ARTHUR L. ALARCÓN, Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unani-

mously to honor the appellant's request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f). The case is therefore submitted without oral argument.

Carl E. Dixon appeals from his conviction of bank robbery, in violation of 18 U.S.C. § 2113(a). Dixon argues that the evidence is insufficient to prove that Dixon took the money from the bank by means of force, violence, or intimidation. He also asserts that reversal of the judgment is required because the prosecutor committed prejudicial misconduct. We affirm.

I

The evidence viewed in the light most favorable to the Government demonstrates that Carl E. Dixon walked into a Lawrence, Kansas bank on June 30, 2000. He walked to the center island and wrote "Give" on a deposit slip. He then walked to the middle teller window and placed the deposit slip and a plastic grocery bag on the counter. He told the teller, Karen Mueller, to "put the money in the bag." Ms. Mueller was unsure what Dixon had said and responded, "What?" Dixon then told her "You have ten seconds." At the same time, Dixon put his hand on his waistband. Ms. Mueller saw a bulge under his shirt. Dixon's conduct and statements caused her to fear for her life and the lives of others in the bank. Based on Dixon's serious tone and his motioning toward his waistband, Ms. Mueller believed Dixon had a weapon. As Ms. Mueller collected the money, she pressed the silent

---

* The Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

alarm button. Dixon reached over the counter and grabbed the cash from Ms. Mueller's hands and left the bank with $1,150 in cash. A bank security camera taped the entire encounter. Dixon's fingerprints were lifted from the center island and a pen located at the counter. The deposit slip was found to contain his handwriting.

Dixon was arrested later the same day. He stated his name as Carl E. Dixon. After waiving his *Miranda* rights, Dixon told the police that he had taken the money, but denied that he used force or violence. He also stated he did nothing to intimidate Ms. Mueller. After running his fingerprints through the FBI's Special Processing Center, the investigating officers discovered that they matched those of a person named Carl Edward Norris. A check of this name disclosed that Dixon had a prior conviction for car theft and a probation sentence. Before the jury, Dixon's counsel stipulated to the bank's location and that Dixon had taken $1,150 from the bank. Lorenzo Bolden, a friend of Dixon's for 20 years, testified that Dixon told him the night before the money was taken from the bank that he was going to commit a bank robbery. The day of the robbery, Dixon told Bolden that he had actually robbed a bank and "might have displayed it to look like he had a weapon." Dixon testified in his own defense. He stated that he did not have a weapon under his shirt and that he did not use or intend to use force, violence, or intimidation in taking the money.

The jury found Dixon guilty of bank robbery. The district court sentenced him to a term of imprisonment of 46 months. Dixon timely filed a notice of appeal from the judgment of conviction. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

Dixon argues that the district court erred in denying his motion for judgment of acquittal. He maintains that the evidence was insufficient to support a finding that he took the money by intimidation. Section 2113(a) provides in relevant part that:

> [w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association ... Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a).

We review the sufficiency of evidence de novo. *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir.1997). "We review the sufficiency of the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mitchell*, 113 F.3d 1528, 1530 (10th Cir.1997) (quotation omitted). "As an appellate court, we are bound by the rule that the resolution of conflicting evidence and the assessment of the credibility of witnesses is within the sole discretion of the jury as the trier of fact." *United States v. Espinosa*, 771 F.2d 1382, 1391 (10th Cir.1985).

In deciding whether there is sufficient evidence of intimidation to support a conviction of bank robbery, this court looks to three factors: "(1) whether the situation appeared dangerous, (2) whether the defendant intended to intimidate, and (3) whether the bank personnel were reasonable in their fear of death or injury."

*Mitchell,* 113 F.3d at 1531 (citing *United States v. Slater,* 692 F.2d 107, 109 (10th Cir.1982)). A finding of intimidation may include both subjective and objective factors. *Slater,* 692 F.2d at 109. In addition, a finding of intimidation does not require the showing of a weapon or verbal threats by the defendant. *Id.*

■ Applying these three factors to the present case, there was sufficient evidence for a jury to conclude that Dixon used intimidation in taking the money. Based on Dixon's demand that Ms. Mueller had ten seconds to give him the money and his movement toward his waist that appeared to have a bulge, Ms. Mueller believed that Dixon had a weapon and that he was dangerous. Witnesses who were inside the bank testified that Ms. Mueller appeared pale, stunned, and scared after Dixon left. This is sufficient evidence for the jury to find that the situation appeared dangerous to Ms. Mueller.

■ There is also sufficient evidence in the record to show that Dixon intended to use intimidation. Despite Dixon's testimony that he did not intend to use force or intimidation to take the money, Dixon's demand that Ms. Mueller had ten seconds to comply and hand over the money is objective evidence that Dixon intended to intimidate Ms. Mueller. The jury was free to infer that his placing a time limit on compliance with his demand while motioning to a bulge in his waistband was meant to cause Ms. Mueller to fear that harm would come to her if she did not obey quickly. This is the kind of "aggressive behavior which very well could have been considered as intimidating by the jury." *Slater,* 692 F.2d at 109.

Furthermore, the jury could properly infer that Ms. Mueller's fear of injury or death was reasonable under these circum-

stances. Despite the fact that Ms. Mueller did not actually see a weapon, it was reasonable for her to fear injury or death from whatever object was concealed in his waistband. "A stranger's urgent demand for money typically would create a situation in a banking institution that appears dangerous and would justify bank personnel in fearing for their lives." *United States v. Smith,* 10 F.3d 724, 729 (10th Cir.1993). Based on this evidence, "a jury could find that an expectation of injury was reasonable in the context of an incident of this kind where a weapon and a willingness to use it are not uncommon." *Slater,* 692 F.2d at 109.

Viewing the evidence in the light most favorable to the Government, there was sufficient evidence for the jury to conclude that Dixon intended to intimidate Ms. Mueller. The district court did not err in denying the motion for judgment of acquittal.

### III

Dixon makes several allegations of prosecutorial misconduct. Dixon moved for a mistrial based on the prosecutor's allegedly improper cross-examination regarding Dixon's criminal history, his out-of-wedlock children, and his non-payment of child support. This court reviews the denial of a motion for mistrial based on alleged prosecutorial misconduct for abuse of discretion. *United States v. Gabaldon,* 91 F.3d 91, 93 (10th Cir.1996).

### A

Dixon asserts that the prosecutor improperly elicited the details of Dixon's prior conviction and subsequent probation revocation for the unauthorized use of a motor vehicle.[1] "Ordinarily, it is improper

---

1. Defense counsel did not object to many of the prosecutor's questions regarding Dixon's

for the prosecution to examine into the details of the crime for which the accused was convicted. The cross-examination should be confined to a showing of the essential facts of convictions, the nature of the crimes, and the punishment." *United States v. Wolf,* 561 F.2d 1376, 1381 (10th Cir.1977). Here, the prosecutor asked Dixon during cross-examination whether he had suffered a prior conviction to impeach his credibility as permitted by Federal Rule of Evidence 609(a)(1). Instead of answering truthfully, however, Dixon initially refused to acknowledge that he had been convicted of a felony or that his probation for that offense had been revoked.

■ The prosecutor's questions regarding Dixon's imprisonment and probation revocation were relevant questions within the scope of Rule 609(a)(1). Dixon's conviction for unauthorized use of a motor vehicle had initially resulted in a sentence of 10 years of probation in lieu of imprisonment. After Dixon violated the terms of his probation, it was revoked and he was sentenced to five years imprisonment. Thus, the prosecutor's questions regarding revocation of Dixon's probation and his subsequent sentence of imprisonment were relevant to show that Dixon's prior conviction was admissible under Rule 609(a)(1) as a crime punishable by imprisonment in excess of one year.

■ Dixon next argues that the prosecutor improperly informed the jury during cross-examination that Dixon is not married to the mother of his children and that he had not paid child support. Defense counsel objected to these questions. The district court sustained the objections.

The district court did not abuse its discretion in denying Dixon's motion for a mistrial on this ground. In deciding whether to grant a motion for a mistrial, the district court should focus on "whether the defendant's right to a fair and impartial trial was impaired." *Gabaldon,* 91 F.3d at 93 (quotation omitted). The prejudicial impact of these questions on the jury must be viewed in the context of the entire case. *Id.* In light of the overwhelming evidence of Dixon's guilt, Dixon has failed to demonstrate that these questions prejudiced his right to a fair trial.

### B

The remainder of Dixon's allegations of prosecutorial misconduct were not included in his motion for mistrial. In reviewing such allegations of misconduct, this court conducts a two-part process. *Gabaldon,* 91 F.3d at 94. First, we must decide "whether the conduct objected to was indeed improper." *Id.* Whether prosecutorial misconduct occurred is reviewed de novo. *Id.* Second, if any of the conduct was indeed improper, we then must determine whether the misconduct warrants reversal:

> A prosecutor's improper statement to the jury is harmless unless there is reason to believe that it influenced the jury's verdict. In assessing whether the misconduct had such an impact, we consider the trial as a whole, including the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case ... [T]o warrant reversal, the misconduct must have been flagrant enough to influence the jury to convict on grounds other than the evidence presented.

---

prior conviction. Nevertheless, "[t]he rule that it is error to inquire about the details of prior criminal conduct is so well established that such error is cognizable despite the ab- sence of any objection by defense counsel." *United States v. Albers,* 93 F.3d 1469, 1480 n. 1 (10th Cir.1996) (quoting *United States v. Harding,* 525 F.2d 84, 88–89 (7th Cir.1975)).

*Id.* (quoting *United States v. Ivy,* 83 F.3d 1266, 1288 (10th Cir.1996)).

██ Dixon maintains that the prosecutor improperly forced Dixon to testify that he believed the Government's witnesses were liars. Defense counsel, however, did not object to these questions. Accordingly, we must review these forfeited contentions for plain error. *United States v. Olano,* 507 U.S. 725, 731–33, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The prosecutor's questions here were substantially similar to the prosecutor's questions in *United States v. Williamson,* 53 F.3d 1500, 1521 n. 13 (10th Cir.1995). In *Williamson,* this court declined to adopt a per se rule that it is misconduct for a prosecutor to force a defendant to testify that other witnesses have lied. 53 F.3d at 1523. This court held that merely asking a defendant to comment on the veracity of other witnesses does not amount to plain error. *Id.* This court stated that more "starkly offensive" conduct by the prosecutor, such as calling a rebuttal witness to emphasize the cross-examination of the defendant or stating during closing argument that a verdict for the defendant would require a finding that all of the government's witnesses were lying, would be required to constitute plain error. *Id.* In the present case, the prosecutor did nothing more than ask Dixon to comment on the veracity of other witnesses. Thus, under *Williamson,* Dixon has not shown that the prosecutor's conduct constituted plain error.

██ Dixon maintains that the prosecutor committed misconduct in asking a series of questions regarding Dixon's alleged drug use. Before trial, the district court granted Dixon's in limine motion to exclude any evidence regarding his use of crack cocaine. During cross-examination, the prosecutor asked several questions relating to drug use. Defense counsel objected to only one of these questions. The court sustained the objection. Dixon contends that the prosecutor's questions assumed facts not in evidence, were not relevant, and were highly prejudicial.

Under the plain error standard of review, Dixon must show that the prosecutor made a "clear" or "obvious" error that affected his substantial rights, and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States,* 520 U.S. 461, 466–69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quotations omitted). While the prosecutor's questions regarding drug use appear to violate the district court's pretrial order, Dixon has not demonstrated that the questions were prejudicial to his substantial rights. The prosecutor's questions regarding Dixon's drug use were relevant to impeach Dixon with prior statements he made to the police and to impeach his credibility as a witness. Indeed, Dixon admitted during cross-examination that he could not remember all the details of what happened during and after the bank robbery due to inebriation. Evidence of a witness's drug use may be admitted to show the effect of the drug use on the witness's memory or recollection of events. *United States v. Smith,* 156 F.3d 1046, 1054–55 (10th Cir.1998). Dixon's failure to object to the questions at trial deprived the district court of the opportunity to reconsider its in limine order to determine whether questions concerning Dixon's drug use would be relevant in light of the evidence that had been presented at trial. Because the prosecutor's questions were relevant to impeach Dixon's credibility as a witness, we conclude that the questions did not constitute plain error. "No 'miscarriage of justice' will result here if we do not notice the error, and we decline to do so." *Johnson,* 520 U.S. at 470 (citation omitted).

Dixon further contends that the prosecutor's questions regarding Dixon's use of an

alias were irrelevant and prejudicial. During a pretrial conference, the district court granted Dixon's in limine motion to exclude references to his alias, concluding that "the name is not relevant." During trial, however, the district court overruled defense counsel's objections to these questions. A district court's admission of evidence is reviewed for abuse of discretion. *United States v. Acosta–Ballardo*, 8 F.3d 1532, 1534 (10th Cir.1993). Under this standard, this court will "reverse only when the trial court's decision is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Smith*, 156 F.3d 1046, 1054 (10th Cir.1998) (quotation omitted).

■ Dixon has failed to demonstrate that the district court's decision to allow questioning regarding Dixon's alias was an abuse of discretion. While the district court did not explain its evidentiary ruling, the district court could have reasonably concluded that inquiry into Dixon's use of an alias was relevant to demonstrate his consciousness of guilt. *United States v. Glass*, 128 F.3d 1398, 1408 (10th Cir.1997) ("A defendant's use of an alias to conceal his identity from law enforcement officers is relevant as proof of consciousness of guilt.").

He further argues that the prosecutor committed misconduct during the cross examination of Dixon by asking him the following questions:

1. "And Karen Mueller, of all the people in the world, would have no reason to tell stories about you, correct?"

2. "So, if during deliberations, the jury were to look at that [bank security video tape] and see you reaching over and taking the money like that, you're telling us that would be the wrong conclusion, correct?"

■ The district court did not abuse its discretion in sustaining objections to these questions. In view of the overwhelming evidence of Dixon's guilt, we are persuaded that the propounding of these questions did not constitute prejudicial prosecutorial misconduct. The only factual dispute concerning Dixon's guilt was whether he acted with force, violence, or intimidation in taking the money from the bank teller. Ms. Mueller's testimony was sufficient to persuade the jury beyond a reasonable doubt that Dixon intimidated her. In addition, the district court minimized any potential harm from the allegedly improper questions by sustaining defense counsel's objections and admonishing the jury that a question is not evidence. "A central assumption of our jurisprudence is that juries follow the instructions they receive." *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir.1998). Reviewing the record, it appears that while the trial was not perfect, it was fair. *See United States v. McHorse*, 179 F.3d 889, 904 (10th Cir.1999) (stating that "[t]he Constitution guarantees a defendant a fair trial, not a perfect one"). Dixon has not demonstrated that the jury was prejudiced in reaching its verdict by the prosecutor's conduct.

AFFIRMED.