**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SUZANNA F. DAILEY,

     Plaintiff - Appellant,

v.

NIKOS HECHT,

     Defendant - Appellee.

No. 17-1409
(D.C. No. 1:16-CV-00581-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

Plaintiff Suzanna F. Dailey appeals a jury verdict in favor of Defendant Nikos Hecht on claims of assault, battery and sexual assault, and intentional infliction of emotional distress. Ms. Dailey argues that errors in the district court's evidentiary rulings and other courtroom practices warrant reversal and a new trial. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

I.

In March 2014, Ms. Dailey and her extended family vacationed in Cabo San Lucas, Mexico. While on vacation, Ms. Dailey claims that Mr. Hecht sexually

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

assaulted her.

The alleged assault occurred on March 25, 2014, on the grounds of Flora Farms, a restaurant where Ms. Dailey, Mr. Hecht, and their respective families and friends attended a dinner party. Ms. Dailey claims Mr. Hecht approached her to accompany him on a walk of the restaurant grounds. He offered her his arm, and together they walked down a path. Shortly thereafter, Ms. Dailey alleges that Mr. Hecht faced her, forcefully placed his hand on the back of her neck, and put his mouth over hers. He then placed Ms. Dailey's hand on his penis. According to Ms. Dailey, the next thing she knew she was on her back and Mr. Hecht forcibly penetrated her.

Mr. Hecht presented a different story at trial. He testified that Ms. Dailey approached him as he walked along the pathway. According to Mr. Hecht, Ms. Dailey made sexually explicit comments to him. She then undid Mr. Hecht's pants and performed five to ten seconds of oral sex on him. Ms. Dailey allegedly pulled Mr. Hecht to the ground on top of her, and the two attempted to have sexual intercourse. Mr. Hecht testified there was no penetration.

According to both Ms. Dailey and Mr. Hecht, when the encounter was over, Mr. Hecht quickly stood up and returned to the dinner table where their families were assembled. Ms. Dailey followed him. She did not tell anyone about their sexual encounter until she confided in her sister the next morning. At that point, her sister had already heard about the sexual encounter from her son, T.A., who observed part of the alleged assault.

2

Three eyewitnesses observed the encounter between Ms. Dailey and Mr. Hecht: Mr. Hecht's personal chef; T.A., Ms. Dailey's fourteen-year-old nephew; and T.A.'s friend G.C.

The chef testified that she was looking for Mr. Hecht when she observed him and Ms. Dailey together on the path. She saw Ms. Dailey get on her knees and begin to touch the top of Mr. Hecht's pants. At that point, the chef returned to the kitchen, believing that Ms. Dailey was about to perform oral sex on Mr. Hecht.

T.A. and G.C. both testified that they saw Ms. Dailey and Mr. Hecht lock arms as they walked along the path. Curious, T.A. and G.C. decided to follow them. The boys lost sight of Ms. Dailey and Mr. Hecht for approximately a minute and a half. When Ms. Dailey and Mr. Hecht reappeared, T.A. testified that he saw Ms. Dailey on her back with Mr. Hecht on his knees above her. He described Ms. Dailey as silent and looking up and away from Mr. Hecht. T.A. also testified that Mr. Hecht thrust his pelvis approximately ten times. G.C. provided substantially the same testimony. Both boys testified they were close enough to hear the encounter and that Ms. Dailey did not say anything. Neither boy observed Ms. Dailey struggling.

Ms. Dailey sued Mr. Hecht over two years later for assault, battery and sexual assault, and intentional infliction of emotional distress. The parties filed eighteen pretrial motions in limine to exclude the introduction of certain unflattering evidence during trial. For example, Mr. Hecht moved to exclude evidence of his alleged drug use. Meanwhile, Ms. Dailey sought to exclude evidence of a prior SEC settlement for insider trading. The district court emphasized that this was "going to be a clean trial.

3

The plaintiffs aren't going to bash Mr. Hecht for all his peccadillos past and present, unless they are relevant specifically to this incident; nor is the defendant going to get away with bashing the plaintiff for her peccadillos . . . ." Consistent with this statement, the district court excluded evidence from both sides.

The district court also excluded evidence related to Mr. Hecht's prescription opioid (specifically, Percocet) use on the day of the alleged assault as well as his history of recreational drug use. In one of the eighteen text-only docket entries, the district court invited Ms. Dailey to present medical evidence that prescription drug use could have negatively affected Mr. Hecht's recollection of events on the night of the alleged assault. Relying on Federal Rule of Evidence 403 the district court ruled:

> If [Ms. Dailey] can show through properly disclosed expert testimony by a qualified health care professional that the defendant's drug use *on the day of the incident* probably affected his ability to recall the incident accurately, that testimony will be permitted. With that exception, the Court finds that defendant's drug use *before and after* the incident has marginal relevance, if any, and that such relevance is substantially outweighed by the danger of unfair prejudice.

(emphases added).

Although she never came forward with expert testimony, at trial Ms. Dailey again urged the court to allow evidence of Mr. Hecht's drug use. Ms. Dailey argued that Mr. Hecht opened the door to questioning about his drug use when he testified to his clear recollection of the night of the alleged assault. The district court was not convinced. It ruled that the door had not been opened because there was no evidence "the opioids he took that day . . . had anything to do with this." The district court also ruled, in accordance with its pretrial invitation to present medical evidence about the

4

effect of prescription drugs on memory, that the jury would be speculating whether the drugs consumed by Mr. Hecht impaired his memory of events.

The district court additionally excluded evidence related to Mr. Hecht's guilty plea to misdemeanor harassment in a 2015 case where authorities charged him with misdemeanor assault, menacing, and harassment of a former romantic partner. In that case, Mr. Hecht pleaded guilty to one count of harassment after he grabbed his partner's purse and bruised her arm. The district court excluded the evidence under Rule 403 because any relevance was substantially outweighed by the danger of unfair prejudice. The district court also limited Ms. Dailey's testimony regarding a newspaper article concerning the harassment. In that regard, the district court permitted Ms. Dailey to testify only that she brought this claim after seeing a newspaper article about Mr. Hecht, but excluded evidence that the article discussed the harassment charges to which he pleaded guilty.

After a four-day trial, the jury found that Ms. Dailey failed to prove her claims by a preponderance of the evidence. The district court thus entered judgment in Mr. Hecht's favor.

Ms. Dailey then moved for a new trial claiming several evidentiary rulings "prejudiced Plaintiff's ability to tell her story." The court denied her motion, explaining:

> The problem was that the story both parties wanted to tell included a great deal of "dirt" that they had dug up on each other. For example, Ms. Dailey wished to show the jury that Mr. Hecht had a history of drug problems, extramarital affairs, and abusive relationships. Mr. Hecht

5

wished to show the jury that Ms. Dailey had a history that included securities fraud and shoplifting.

The Court made it clear before and during the trial that it would not permit the trial to be sidetracked by marginally relevant (at best) and inflammatory evidence, and that the case would be tried on the facts of what happened that evening in Mexico.

II.

A.

Ms. Dailey raises three challenges to the district court's evidentiary rulings based on Federal Rule of Evidence 403. First, Ms. Dailey contends the district court erred by excluding evidence of Mr. Hecht's drug use, both on the day of the alleged assault and his general recreational drug use. Second, she challenges the district court's exclusion of evidence related to Mr. Hecht's arrest and guilty plea for misdemeanor harassment. Finally, Ms. Dailey argues that even if not reversible individually, the cumulative effect of the alleged evidentiary errors requires reversal.

We review the district court's evidentiary decisions for an abuse of discretion. United States v. Silva, 889 F.3d 704, 709 (10th Cir. 2018). "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Id. (internal quotation marks omitted). Under this standard, "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Pandit v. Am. Honda Motor Co., 82 F.3d 376, 379 (10th Cir. 1996) (quoting Boughton v. Cotter Corp., 65 F.3d 823, 832 (10th Cir.1995)).

6

A district court may generally admit relevant evidence. Fed. R. Evid. 402. However, Federal Rule of Evidence 403 allows the district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is unfairly prejudicial if "it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment" as to liability. United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999) (quoting United States v. Roberts, 88 F.3d 872, 880 (10th Cir. 1996)). "[T]he unfair prejudice aspect of Rule 403 cannot be equated with testimony which is simply unfavorable to a party." Rodriguez, 192 F.3d at 951 (quoting United States v. Flanagan, 34 F.3d 949, 953 (10th Cir. 1994)).

Ms. Dailey argues that the district court abused its discretion by excluding evidence of Mr. Hecht's use of the drug Percocet on the day of the alleged assault. In a deposition, Mr. Hecht testified that he generally took a five-milligram pill with breakfast, lunch, and dinner. According to Mr. Hecht, at the time of his sexual encounter with Ms. Dailey, he would have consumed between two to three pills that day. In the deposition, Mr. Hecht further testified that he did not feel impaired when taking the medicine. At trial he repeatedly testified as to his clear recollection of the night of the alleged assault. Ms. Dailey argues that she should have been allowed to present evidence that he consumed Percocet on the night of the alleged assault to attack the veracity of his statements regarding his memory.

Evidence of a witness's drug use is relevant and may be admissible to attack the witness's "ability to perceive the underlying events and testify lucidly at trial." United States v. Apperson, 441 F.3d 1162, 1196 (10th Cir. 2006) (quoting Jarrett v. United States, 822 F.2d 1438, 1446 (7th Cir. 1987)). But evidence of a witness's prior drug use cannot be used to attack the witness's general credibility. Id. at 1195. Further, even when a witness's drug use is admissible to attack his perception of the underlying events, no per se rule requires the judge to admit the evidence. See United States v. Jones, 213 F.3d 1253, 1261 (10th Cir. 2000) (suggesting prescription medications *might* affect a witness's "memory, perception, or comprehension"); United States v. Dixon, 38 F. App'x 543, 548 (10th Cir. 2002) ("Evidence of a witness's drug use *may* be admitted to show the effect of the drug use on the witness's memory or recollection of events." (emphasis added)). To be sure, a district court may exclude otherwise relevant evidence under Rule 403. See Fed. R. Evid. 403.

Here, the district court determined that evidence of Mr. Hecht's drug use had "marginal relevance, if any, and that such relevance is substantially outweighed by the danger of unfair prejudice." Nonetheless, the district court provided a specific exception to this ruling, which would have allowed Ms. Dailey to introduce evidence of Mr. Hecht's use of Percocet on the day of the alleged assault, if she showed "through properly disclosed expert testimony by a qualified health care professional that the defendant's drug use on the day of the incident probably affected his ability to recall the incident accurately." Absent that showing, the district court determined the evidence of Mr. Hecht's prescription drug use should be excluded under Rule 403.

As she must concede, Ms. Dailey never attempted to produce any testimony from a qualified witness about the impact of Percocet on memory. Given Ms. Dailey's choice not to present testimony from a qualified witness, the district court reasonably concluded that evidence of Mr. Hecht's prescription drug use has little probative value. As the district court observed, without the testimony of a qualified witness regarding how the type and amount of prescription pills could affect Mr. Hecht's ability to recall the events of that night, the jury would be left to speculate. We have held that speculation is an impermissible ground on which a jury may base a verdict. See Bankers Tr. Co. v. Lee Keeling & Assocs., Inc., 20 F.3d 1092, 1101 (10th Cir. 1994) ("[T]he jury's finding that [the defendant] was negligent . . . could only have been based on speculation and conjecture, an impermissible ground upon which to base its verdict."); cf. Jones, 213 F.3d at 1261 (holding that the district court did not abuse its discretion by refusing to allow the defendant to cross-examine a witness about his medical history without testimony from a medical expert on the effect of the medication on the witness's memory, perception, or comprehension).

Further, the probative value of this evidence is substantially outweighed by the prejudicial impact such evidence would have, given the negative connotations surrounding opioid use. Evidence of drug use—including prescription drug use— carries the risk that a jury could make negative assumptions about the party or the party's character. See e.g., United States v. Sellers, 906 F.2d 597, 602 (11th Cir. 1990) (noting the "extreme potential for unfair prejudice flowing from evidence of drug use"); Reppert v. Marion, 259 F. App'x. 481, 489 (3d Cir. 2007) (noting that testimony

9

relating to prior drug use has "a substantial tendency to confuse the issues, and to inflame passions of the jury by unfairly tilting the balance of sympathies in favor of defendants"). On this basis, the decision of the district court to exclude this evidence was not an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Silva, 889 F.3d at 709. We thus conclude that the district court did not abuse its discretion in excluding evidence of Mr. Hecht's specific drug use on the night of the alleged sexual assault.

Ms. Dailey next argues that the district court erred when it excluded evidence of Mr. Hecht's recreational drug use under Rule 403 because that evidence was necessary to "impeach [Mr. Hecht's] inconsistent testimony." Specifically, she claims that Mr. Hecht previously lied under oath about his recreational drug use. Thus, she claims, she should have been given the opportunity to cross examine Mr. Hecht about the content of those inconsistent statements to establish his propensity for untruthfulness under Federal Rule of Evidence 608(b).

As a threshold matter, Ms. Dailey has not shown that the district court abused its discretion by excluding evidence of Mr. Hecht's recreational drug use under Rule 403. The probative value of this evidence is negligible and does not make it more or less likely that Mr. Hecht assaulted Ms. Dailey. Certainly, Ms. Dailey has not attempted to provide a nexus between Mr. Hecht's recreational drug use and the alleged assault. Cf. United States v. Holden, 557 F.3d 698, 703 (6th Cir. 2009) (concluding that evidence of drug use and treatment were too remote in time, *lacked a causal relationship* with testimony at trial, and were thus laden with potential unfair

10

prejudice). Evidence of Mr. Hecht's recreational drug use is also highly prejudicial and could lead to a decision on an improper, emotional basis. Rodriguez, 192 F.3d at 951 (Evidence is unfairly prejudicial if "it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment."). A jury could conceivably find Mr. Hecht liable solely because "he is a drug abuser," and thus deserving of punishment. Cf. United States v. Mojica, 185 F.3d 780, 788–89 (7th Cir. 1999) ("[T]here is considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony." (internal quotation marks omitted)).

Because the danger of unfair prejudice substantially outweighs the probative value of this evidence, the district court did not abuse its discretion under Rule 403 by excluding evidence of Mr. Hecht's recreational drug use.

Ms. Dailey argues that the statements about Mr. Hecht's recreational drug use should have been admitted under Rule 608(b) to establish his propensity for untruthfulness. But this ignores the district court's proper exclusion of that evidence under Rule 403. Where the district court excludes evidence under Rule 403, that exclusion controls even though the evidence is otherwise admissible for impeachment purposes pursuant to Rule 608(b). United States v. Olivo, 80 F.3d 1466, 1470 (10th Cir. 1996); United States v. Skelton, 514 F.3d 433, 445 (5th Cir. 2008).

Ms. Dailey next challenges the district court's exclusion of evidence related to Mr. Hecht's misdemeanor harassment arrest and guilty plea in an unrelated case. According to Ms. Dailey, the district court's ruling prevented her from explaining to

11

the jury why she waited two years before bringing a lawsuit against Mr. Hecht.  She hoped to tell the jury that she brought her suit after she saw an article about Mr. Hecht in the paper describing charges against him for assault and harassment against another woman.  According to Ms. Dailey, she "realized that Mr. Hecht was hurting others, and she wanted to make sure that those prosecuting Mr. Hecht knew what had happened to her and that she was willing to testify to help [the other alleged victim]."  The district court permitted her to testify only that she brought this suit after seeing an article about Mr. Hecht, but ordered her not disclose to the jury the contents of the article.

As a general matter, Mr. Hecht's misdemeanor conviction for harassment is not admissible at trial.  Federal Rule of Evidence 609(a) "permits impeachment by proof of conviction of a misdemeanor only if the crime involved dishonesty or false statement."  United States v. Harvey, 588 F.2d 1201, 1203 (8th Cir. 1978); Fed. R. Evid. 609(a)(2).  Because the basic elements of harassment do not involve dishonesty or false statements, the most Ms. Dailey could have introduced at trial were the allegations contained in the article she saw.

The district court correctly excluded evidence of the harassment allegations against Mr. Hecht because "the relevance of this evidence, if any, is substantially outweighed by the danger of unfair prejudice."  Ms. Dailey argues that the evidence has probative value because it helps fill a "chronological and conceptual void"— namely, her choice to file the lawsuit two years after the sexual encounter occurred. This argument ignores, however, that the district court permitted Ms. Dailey to testify that she chose to bring charges against Mr. Hecht after she saw an article about him in

12

the newspaper. The district court determined that the contents of the article were unnecessary to fill any "chronological and conceptual void." The district court explained in its order denying Ms. Dailey's post-trial motions:

> The fact, if it was a fact, that Mr. Hecht had in the past been verbally or physically abusive to [another woman] has no apparent relevance to whether his sexual contact with Ms. Dailey in March 2014 was consensual, other than it related to his alleged character trait of abusing women. But to any extent it could be said to be relevant for a legitimate purpose other than evidence of Mr. Hecht's character, my judgment was and is that its probative value is substantially outweighed by the danger of unfair prejudice.

Like the district court, we conclude the danger of unfair prejudice of this evidence substantially outweighs its probative value. The evidence is not probative of whether the sexual encounter between Ms. Dailey and Mr. Hecht was consensual. Further, the probative value related to the chronology of Ms. Dailey's decision to come forward with her sexual assault allegations is substantially outweighed by a danger of unfair prejudice. There can be little doubt the evidence of Mr. Hecht's arrest for misdemeanor assault and harassment would have been highly prejudicial to Mr. Hecht. A jury could be more inclined to believe sexual assault allegations made against an individual with a history of abusing women. This is precisely the type of prejudice the rules of evidence seek to prohibit.[1] Allowing Ms. Dailey to present evidence of a

---

[1] In addition to being excludable under Rule 403, the evidence could also be excluded under Rule 404(a), which explicitly prohibits evidence being offered to prove a specific character trait in this context. Tanberg v. Sholtis, 401 F.3d 1151, 1167 (10th Cir. 2005) ("The Federal Rules of Evidence generally preclude the use of evidence of crimes or wrongs unrelated to the conduct at issue if that evidence is offered to prove a propensity to behave in a particular manner.").

misdemeanor arrest, unrelated to her sexual assault allegations, would be significantly prejudicial given the nature of Ms. Dailey's allegations.

The district court did not abuse its discretion by excluding evidence of the assault and harassment allegations against Mr. Hecht from the jury.

Finally, Ms. Dailey argues that the cumulative effect of the alleged trial errors requires reversal. Because we conclude the district court made no evidentiary errors, there is no basis upon which to find a cumulative error. United States v. Fuentez, 231 F.3d 700, 709 (10th Cir. 2000).

B.

Ms. Dailey next asserts for the first time on appeal that the district court made a prejudicial comment in the presence of the jury. She alleges that the comment amounts to reversible error.

Ms. Dailey requests that the Court expand the record on appeal to include an affidavit from a paralegal on her legal team. The affidavit states that at some point during the trial the district court received a handwritten question from the jury and the judge jokingly stated "not guilty" while unfolding the paper. The judge allegedly went on to explain to the jury that this is how he usually receives verdict forms.

The paralegal on Ms. Dailey's legal team is the only person who claims to have heard this comment. According to the affidavit, this paralegal "told one of Ms. Dailey's lawyers that the Judge had mocked the opening of a 'not guilty' verdict in front of the jury" after the trial ended for the day. "When [they] received that day's

14

real time transcript," the affidavit continues, "[they] reviewed the transcript for the Judge's statement but did not find it."

Despite having notice of the allegedly prejudicial comment, Ms. Dailey's attorneys never objected to the judge's statement in the district court. In fact, in the Reply in support of the Motion to Supplement the Record, attorneys for Ms. Dailey acknowledged trial counsel "*elected not to raise [this] issue that might have undermined her entire case*." (emphasis added).

A party cannot observe an error, choose not to raise it, and use it to seek relief if the verdict does not go her way. See United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238–39 (1940) ("[C]ounsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial."). "Where, as here, a plaintiff pursues a new legal theory for the first time on appeal" and that theory "*was intentionally relinquished or abandoned in the district court*, we usually deem it waived and refuse to consider it." Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1127 (10th Cir. 2011) (emphasis added). Because Ms. Dailey admits that her counsel strategically and purposefully elected not to raise this issue before the district court, this issue is waived, and we deny Ms. Dailey's motion to supplement the record on appeal.

C.

During trial, the district court allowed jurors to present questions to the witnesses. The procedure for juror questions was first set forth in a proposed jury

15

instruction, submitted jointly by Ms. Dailey and Mr. Hecht. The proposed instruction reads:

> Rules governing jury trials do not allow jurors to ask questions directly of a witness. However, if you do have a question you would like to ask a witness during the trial, write your question down, but do not sign it. After each witness's testimony, before he or she leaves the witness stand, I will ask if there are any juror questions. The Court Room Deputy will collect your questions and hand them to me.
>
> I may discuss the question with the lawyers. If I decide the question is proper, it will be asked when appropriate. Keep in mind, however, that the rules of evidence or other rules of law may prevent some questions from being asked. I will apply the same legal standards to your questions as I do to the questions asked by the lawyers.
>
> If a particular question is not asked, do not guess why or what the answer might have been. The failure to ask a question is not a reflection on the person asking it, and you should not attach any significance to the failure to ask a question proposed by a juror.

The district court discussed the use and procedure for juror questions twice more before the end of trial—once during a pretrial conference and once again during trial. At neither time did Ms. Dailey object to the use of juror questions.

Ms. Dailey concedes she "did not object to the overall practice of juror questioning in the district court." In fact, she actively submitted proposed jury instructions allowing for juror questions and thus invited the activity she is now claiming is error.

Under the invited error doctrine, a party may not induce or approve an action by the district court and later seek reversal on the same ground. Invited error occurs when "the party sought out or *affirmatively approv[ed]* an errant outcome." United States v. Thornton, 846 F.3d 1110, 1117 n.3 (10th Cir. 2017) (internal quotation marks omitted)

16

(emphasis added). "It is a species of waiver because it requires intentional relinquishment of a right." Id. (internal quotation marks omitted). We have specifically declined to review an alleged error when a defendant invited the error through the submission of proposed jury instructions and verdict forms that were functionally the same as those ultimately used by the court. United States v. Fields, 516 F.3d 923, 939 (10th Cir. 2008).

By submitting proposed jury instructions that allowed for juror questions, Ms. Dailey invited this error. She had ample opportunity to object to their use in the district court. Ms. Dailey's objection to the use of jury questions is thus waived, and she is not entitled to appellate relief.

D.

For the foregoing reasons, the district court's judgment is

AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge